Ronald L. KROME, Scott Freeman, Raymond Jackson and Carl Sacks, Trustees of the University Emergency Services Profit Sharing Trust, Mildred Sharkey, Michael Courtney and Robert Pacquett, Trustees of Eastside Wholesale Supply Employees Pension Plan and Trust, John J. O'Keefe, Joseph Stamell and James Peterson, Sr., Trustee of the Greenfield Lumber Co. Employee Profit Sharing Trust, Plaintiffs,

v.

MERRILL LYNCH & CO., INC. and Merrill Lynch, Pierce, Fenner & Smith Incorportated, Defendants.

No. 85 Civ. 765 (DNE).

United States District Court, S.D. New York.

June 17, 1986.

---

Milberg, Weiss, Bershad, Spechtrie & Lerach, New York City, Patricia M. Hynes, of counsel; Nelson Chase, West Bloomfield, Mich., Issler, Harding & Schrage, P.C., New York City, Harry Issler, of counsel; Lovell & Stewart, New York City, Christopher Lovell, of counsel & Jared Stamell, New York City, for plaintiffs.

Rogers & Wells, New York City, William P. Rogers, William F. Koegel, James N. Benedict & Bruce Braverman, of counsel, for defendants.

EDELSTEIN, District Judge:

This is a civil action alleging violations of Section 12(1) of the Securities Exchange

Act of 1933 ("1933 Act"), 15 U.S.C. § 77*l* (1); Section 12(2) of the 1933 Act, 15 U.S.C. § 77*l* (2); Section 17 of the 1933 Act, 15 U.S.C. § 77q; Section 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j and Rules 10b–5 and 10b–10 promulgated thereunder, 17 C.F.R. 240.-10b–5, 10b–10; and the Investment Company Act ("ICA"), 15 U.S.C. § 80a–1 *et seq.* Defendants have moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the causes of action under Section 12(2) of the 1933 Act as to all but two plaintiffs based on the statute of limitations, the causes of action under Sections 12(2) and 17 of the 1933 Act and Section 10(b) of the 1934 Act and Rules 10b–5 and 10b–10, and the cause of action under the ICA for failure to state a claim. The motion is granted in part and denied in part. Plaintiffs have moved for class certification. This motion is granted.

## BACKGROUND

This action arises out of Merrill Lynch, Pierce, Fenner & Smith Incorporated's ("Merrill Lynch") sale of Treasury Investment Growth Receipts ("TIGRs") to the public beginning in approximately August 1982. Plaintiffs are purchasers of TIGRs.

TIGRs are in the nature of zero coupon bonds which are sold at a discount from their face value. The face value is due on the date of maturity. Plaintiffs allege that Merrill Lynch made claims to the public in offering circulars and prospectuses that TIGRs were a Merrill Lynch innovation combining the special features of zero coupon bonds with the security of United States government backing.

Plaintiffs contend that Merrill Lynch represented that the payment obligations on the TIGRs would be covered by the principal and interest payments on United States Treasury Bonds ("Treasury Bonds") purchased by Merrill Lynch in sufficient amounts for such purposes, and that the TIGRs represent ownership of future principal and interest payments on the Treasury Bonds. The named plaintiffs purchased their TIGRs at different times. For purposes of this Opinion, it is convenient to divide plaintiffs into two groups: those purchasing TIGRs in 1983 ("1983 Group") and those purchasing in 1984 ("1984 Group").[1]

Plaintiffs allege that Merrill Lynch violated the 1933 Act and the 1934 Act by failing to disclose material information with respect to TIGRs and by issuing false statements concerning the TIGR program. Plaintiffs allege that Merrill Lynch violated numerous provisions of the ICA by, among other actions, offering TIGRs for sale through the mails without registering; that the TIGR program employs Merrill Lynch as a broker underwriter; that Merrill Lynch represented that TIGRs were guaranteed by the United States government; and that Merrill Lynch acted as an investment advisor to the TIGR program without a written contract.

Defendants have moved, pursuant to Rule 12(b)(6), to dismiss the Section 12(2) claim as to the 1983 group, portions of the Section 12(2) claim, the Section 10(b) and Rules 10b–5 and 10b–10 claims, the Section 17 claim and the ICA claims.

## I. MOTION TO DISMISS

### A. The Statute of Limitations as Implicated in the 1983 Group: Section 12(2) Claims.

Plaintiffs claim that defendants used brochures, offering circulars, and prospectuses containing untrue statements of material facts and omissions of material facts as means to offer and sell TIGRs. Plaintiffs further claim that transportation in and communication through interstate com-

---

**1.** The 1983 Group includes: (a) Ronald L. Krome, Scott Freeman, Raymond Jackson and Carl Sacks, who purchased their TIGRs on or about May 6, 1983; (b) Michael Courtney who also purchased his TIGR on or about May 6, 1983; (c) Mildred Sharkey who purchased her TIGR on or about May 20, 1983; and (d) James Peterson who purchased his TIGR on or about June 6, 1983. The 1984 Group includes: (a) John J. O'Keefe who purchased his TIGR late in December 1984; and (b) Joseph Stamell who made purchases in July and December 1984.

merce and the mails were used. Plaintiffs allege that this conduct violated Section 12(2) of the 1933 Act.

Defendants move to dismiss the Section 12(2) claim as to the 1983 Group on the ground that it is barred by the statute of limitations. Defendants claim that the plaintiffs in the 1983 Group failed to comply with the requirement that an aggrieved party either commence an action under the statute within one year following purchase, or affirmatively plead facts establishing compliance with the statute. Sufficient pleading includes establishing plaintiffs' diligence in attempting to discover alleged misstatements and omissions. *Alfaro v. E.F. Hutton & Co.*, 606 F.Supp. 1100, 1107 (E.D.Pa.1985); *Brick v. Dominion Mortgage & Realty Trust*, 442 F.Supp. 283, 291–92 (W.D.N.Y.1977); *see* 15 U.S.C. § 77*l*(2).

The statute of limitations for Section 12(2) is prescribed by Section 13 of the 1933 Act which provides in relevant part, "[N]o action shall be maintained to enforce any liability under section ... 12(2) of this title unless brought within one year after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m. Where the very statute that creates the cause of action also contains a limitations period, the statute of limitations not only bars the remedy but also destroys the liability. *Cook v. Avien, Inc.*, 573 F.2d 685, 695 (1st Cir.1978). Therefore, the burden of showing compliance with the Section 12(2) statutory period of limitations rests with the plaintiff. *Id.* Section 13 has been interpreted as substantive rather than procedural, in that it is viewed as setting forth an essential ingredient to a private cause of action based on Section 12(2). Limitations of this sort require factual determinations which should not be resolved on a motion to dismiss, but rather should be left for final determination at trial. *Bull v. American Bank and Trust Co. of Pennsylvania*, 18 Sec.Reg. & L.Rep. (BNA) 315, 316 (E.D.Pa. Jan. 13, 1986) [Available on WESTLAW, DCTU database]; *Kroungold*

*v. Triester*, 407 F.Supp. 414, 419 (E.D.Pa. 1975).

Section 13 establishes a reasonable diligence requirement so that an action is considered timely if the action is commenced within one year after the possibility of fraud should have been apparent. *See Hill v. Der*, 521 F.Supp. 1370, 1389 (D.Del.1981); 15 U.S.C. § 77m. To adequately plead compliance with this requirement, the plaintiff must set forth: (1) the time and circumstances of the discovery of the fraudulent statement; (2) the reasons why it was not discovered earlier (if more than one year has lapsed); and (3) the diligent efforts which plaintiff undertook in making or seeking such discovery. *Hill v. Der*, 521 F.Supp. at 1389; *Kroungold*, 407 F.Supp. at 419.

In the case at bar, plaintiffs allege that "[t]his action has been brought within one year after the discovery of the omissions or after such discovery should have been made by the exercise of reasonable diligence and within three years after the sale of the securities." Complaint at ¶ 40. Conclusory allegations, such as these, are insufficient to satisfy the pleading requirements of Section 13. *See Hill v. Der*, 521 F.Supp. at 1387.

Plaintiffs contend, however, that defendants may not inequitably take advantage of their own wrong by relying on the statute of limitations as a bar to a cause of action. *See Katz v. Amos Treat & Co.*, 411 F.2d 1046, 1055 (2d Cir.1969); *see also Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231, 232–33, 79 S.Ct. 760, 761–62, 3 L.Ed.2d 770 (1959). For the doctrine of equitable tolling to apply, a plaintiff must allege and prove that the defendant took positive steps after the commission of the initial fraud to keep it concealed. The complaint must, therefore, set forth essential facts supporting the claim of fraudulent concealment. *Hill v. Equitable Trust Co.*, 562 F.Supp. 1324, 1344 (D.Del.1983). The present complaint fails to allege such facts, and is, therefore, insufficient to invoke the doctrine of equitable tolling.

Thus, plaintiffs' claims under Section 12(2) of the 1933 Act contained in their second cause of action are dismissed. Plaintiffs, within ten days of this Opinion, may file an amended complaint. The complaint must be amended to properly plead either the issue of reasonable diligence or equitable tolling as outlined in this opinion. *See Hill v. Der*, 521 F.Supp. at 1389.

### B. Failure to State a Claim for Which Relief Can be Granted.

Defendants seek to dismiss the Claims based on Sections 17 of the 1933 Act and Section 10(b) of the 1934 Act and Rules 10b–5 and 10b–10 promulgated thereunder and the ICA claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

#### 1. *§ 10, § 12(2) and § 17 Claims*

Plaintiffs claim that defendants violated Section 10(b) of the 1934 Act and Rules 10b–5 and 10b–10 promulgated thereunder as well as Section 12(2) and 17 of the 1933 Act. Plaintiffs allege that defendants have done this by offering TIGRs for purchase and sale to the public through interstate commerce and the mails when the brochures and prospectuses contained materially false statements and material omissions regarding markups, the amount added on to the price of a security that is paid to the seller. Further, plaintiffs assert that defendants knew of and intended to deceive plaintiffs or alternatively acted with reckless disregard in not realizing the misleading nature of the information provided. By relying on the omissions and misstatements, plaintiffs allege that they sustained damages after purchasing TIGRs.

#### a. Rule 10b–10

Defendants move to dismiss the Rule 10b–10 claim on the ground that the Rule limits disclosure of markups to situations in which three specific criteria are met. Under the Rule, markups must only be disclosed where the following three conditions are satisfied: 1) the transaction involves an equity security; 2) the broker-dealer is not a market-maker; and 3) the broker-dealer makes contemporaneous offsetting purchases on the sale of securities from or to another person. Defendants deny that any of these situations apply, claiming: 1) that TIGRs are debt instruments; 2) that plaintiffs make no specific allegations of Merrill Lynch's being a market-maker; and 3) that plaintiffs do not allege specifically that Merrill Lynch matched its sales to offsetting purchases from third parties.

Plaintiffs concede that Rule 10b–10 does not require defendants to make disclosure. Thus, to the extent this claim is based on Rule 10b–10, it is dismissed.

#### b. Rule 10b–10 as a Safe Harbor

■ Defendants move to dismiss the Rule 10b–5 claim, the Section 12(2) claim and the Section 17 claim on the grounds that Rule 10b–10 acts as a "safe harbor" against liability under any other provisions of the securities laws. For the following reasons, the court rejects this contention.

##### 1) *Rule 10b–5*

Rule 10b–5 regulates fraud in connection with the purchase or sale of a security by making unlawful certain practices that would operate as a fraud upon the buyer or seller of the security. Plaintiffs allege that misstatements and omissions regarding the markups were disseminated through TIGRs brochures, offering circulars, promotional material, and articles appearing in the New York Times, Wall Street Journal, periodicals and industry publications.

Defendants assert that they had no duty to disclose the markups, relying on the provisions of Rule 10b–10. Defendants contend that the list therein comprises the only situations in which there is a duty to disclose a markup.

■ To succeed in a 10b–5 cause of action, plaintiff must establish that "(1) defendants made a material misstatement or omitted to state a material fact in connection with the purchase or sale of securities; (2) defendants acted with the requisite

scienter; (3) plaintiff relied on such statements or omissions; and (4) plaintiff suffered damage as a result." *Fisher v. Plessey Co. Ltd.*, 103 F.R.D. 150, 155 (S.D.N.Y. 1984). Merrill Lynch, as an issuer of the securities, has a duty to disclose material information to purchasers of the securities independent of Rule 10b–10. *See James v. Gerber Products Co.*, 587 F.2d 324, 327 (6th Cir.1978); *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 860–62 (2d Cir.1968) (en banc), *cert. denied*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969); *see also* Exchange Act Release No. 13,508, Investment Co. Act Release No. 9,753, *reprinted in* [1977–1978 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 81,143, at 87,930 n. 28 (May 5, 1977) (Rule 10b–10 "does not attempt to set forth all possible categories of material information to be disclosed by broker-dealers in connection with a particular transaction with securities. Rule 10b–10 only mandates the disclosure of information which can generally be expected to be material.") [hereinafter cited as Exchange Act Release]. The question whether the markups constitute material information is left to the fact finder. *See James v. Gerber Products Co.*, 587 F.2d at 327.

■ Further, Rule 10b–10 was intended to provide additional protection to securities purchasers. *See* Exchange Act Release, *supra*, *reprinted in* [1977–1978 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 81,143, at 87,924. The court will not interpret this rule to reduce the protection afforded purchasers under other provisions of the securities laws. *Cf. Herman & MacLean v. Huddleston*, 459 U.S. 375, 382–83, 103 S.Ct. 683, 687–88, 74 L.Ed.2d 548 (1983) (exception would not be carved out of § 10(b) of 1934 Act which is a "catchall" for acts that might also be actionable under § 11 of the 1933 Act; to do so would result in less protection being provided to purchasers of securities). If the elements of a 10b–5 cause of action are established, the purchaser should be able to recover under 10b–5. Thus, even though defendants did not violate Rule 10b–10, they may still be subject to liability under Rule 10b–5. *See Shivangi v. Dean Witter Reynolds, Inc.*, 107 F.R.D. 313, 316–18 (S.D.Miss.1985).[2]

### 2) *Section 12(2) of the 1933 Act*

Plaintiffs claim that defendants used brochures, offering circulars, and prospectuses containing untrue statements of material fact and omissions of material facts as means to offer and sell TIGRs. Plaintiffs specifically plead Merrill Lynch's use of mails and interstate commerce to promulgate omissions and misstatements in the TIGRs prospectus in violation of Section 12(2). This section expressly creates a private right of action for rescission and damages. The defendants move to dismiss this claim based on the safe harbor theory. On the grounds previously stated, the motion to dismiss the Section 12(2) claim is denied.

### 3) *Section 17 of the 1933 Act*

Plaintiffs allege that defendants acted intentionally, recklessly, or negligently in offering TIGRs for sale through fraudulent means. This includes the use of false and misleading information resulting in damages to plaintiffs when defendant wrongfully obtained money from them. Plaintiffs claim that defendant thereby engaged in fraud and deceit regarding purchase and sale of TIGRs in violation of Section 17 of the 1933 Act.

Defendants move to dismiss based on their safe harbor argument, *supra*. As stated above, this argument cannot be accepted and therefore the motion is denied.[3]

---

**2.** While the failure to disclose the markups may constitute a violation of Rule 10b–5, the amount of the markup, if determined to be excessive, may also constitute a violation of this rule. *See In re Powell & Associates, Inc.*, Exchange Act Release No. 18577, 24 SEC Docket 1671, 1673–74 (Mar. 22, 1982); *In re Crosby & Elkin, Inc.*, Exchange Act Release No. 17709, 22 SEC Docket 772, 775 (Apr. 13, 1981); *In re Blumenfeld*, Exchange Act Release No. 16437, [1979–1980 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 82,396, at 82,678–79 (Dec. 19, 1979).

**3.** Defendants question whether a private right of action exists under Section 17(a) of the 1933 Act. Present law in the Circuit is that a private

### 2. Investment Company Act of 1940

■ Plaintiffs have alleged numerous violations of the Investment Company Act, 15 U.S.C. § 80a–1 *et seq.* Plaintiffs contend that they have sustained damages as a result of these violations and also seek to enjoin defendants from further violations of the ICA. Defendants move to dismiss the ICA claims on the ground that there is no private right of action under the ICA.[4]

#### a. 15 U.S.C. § 80a–22

Plaintiffs allege that excessive loads were assessed in violation of 15 U.S.C. § 80a–22. Section 22 provides that securities associations such as the NASD were to promulgate rules regarding excessive loads and that the Commission would have oversight authority regarding these rules. 15 U.S.C. § 80a–22(b). The NASD is the only securities association covered by the statute and has adopted a rule pursuant to this statute. *See* NASD Manual, Rules of Fair Practice, Art. III, Sec. 26(d), ¶ 2176. Thus, plaintiffs are actually seeking to enforce the applicable NASD rule.

Implying a private right of action for violations of the NASD rule adopted pursuant to Section 22 of the ICA is analogous to implying a private right of action for violations of exchange and NASD rules adopted pursuant to Sections 6 and 15A of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78f, 78o–3. The analysis applied in the 1934 Act cases can be applied to the ICA.

■ A predominant consideration is whether Congress intended to create a private cause of action. *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979). The congressional intent, however, must be examined in light of the practice of the courts at the time Congress enacts or amends the legislation. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 378–79, 102 S.Ct. 1825, 1839–40, 72 L.Ed.2d 182 (1982); *see Meyer v. Oppenheimer Management Corp.*, 764 F.2d 76, 86–88 (2d Cir.1985) (implied private right of action under Section 15(f) of the ICA using *Curran* analysis). There has been a "long standing practice in the courts of inferring private remedies under the ICA." Note, *Implied Private Rights of Action Under the Investment Company Act of 1940*, 40 Wash. & Lee L.Rev. 1069, 1085–86 (1983) [hereinafter cited as *Implied Rights of Action* ]; *accord Fogel v. Chestnutt*, 668 F.2d 100, 110 (2d Cir.1981), *cert. denied*, 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982); Korpela & Reiser, *Shareholders' Suits Against Investment Companies*, 30 A.L. R.3d 1088, 1101 (1970); *see, e.g., Esplin v. Hirschi*, 402 F.2d 94, 103 (10th Cir.1968), *cert. denied*, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); *Brown v. Bullock*, 294 F.2d 415, 418 (2d Cir.1961) (en banc); *see also Krasner v. Dreyfus Corp.*, 500 F.Supp. 36, 37 (S.D.N.Y.1980) (application for approval of settlement in private action under Section 22 of ICA). In amending the ICA in 1970, Congress did not deny the existence of implied remedies under the act. *See* Pub.L. No. 91–547, 84 Stat. 1413 (1970) (codified as amended as 15 U.S.C. §§ 80a–1 to 80a–64 (1982)). The analysis in *Curran* therefore leads to the conclusion that Congress intended to preserve the remedy the courts have inferred. *Implied Rights of Action, supra*, 40 Wash. & Lee L.Rev. at 1085–86; *see Schuyt v. Rowe Price Prime Reserve Fund, Inc.*, 622 F.Supp. 169, 176–77 (S.D.N.Y.1985).

---

right of action does exist under this provision. *See Kirschner v. United States*, 603 F.2d 234, 241 (2d Cir.1978), *cert. denied*, 442 U.S. 909, 444 U.S. 995, 99 S.Ct. 2821, 100 S.Ct. 531, 61 L.Ed.2d 274, 62 L.Ed.2d 426 (1979). This court will adhere to the law of this Circuit until it is determined by the court of appeals to be otherwise. *See McMahon v. Shearson/American Express, Inc.*, 788 F.2d 94, 98 (2d Cir.1986).

**4.** By its terms, only Section 7(a) of the ICA applies to unregistered investment companies. *See* 15 U.S.C. § 80a–7(a). Plaintiffs allege that defendants did not register. Failure to register, however, does not insulate a company from the other provisions of the ICA. To hold otherwise would subject firms who do not register to less stringent regulation than those who do register. *In re Townsend Corp. of America*, 42 S.E.C. 282, 316–17 (1964).

An additional consideration is the "'nature of the particular rule and its place in the regulatory scheme.'" *Zerman v. Jacobs*, 510 F.Supp. 132, 135 (S.D.N.Y.) (quoting *Colonial Realty Corp. v. Bache & Co.*, 358 F.2d 178, 182 (2d Cir.), *cert. denied*, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966)), *aff'd mem.*, 672 F.2d 901 (2d Cir. 1981). A rule that plays an "integral and supplemental role in SEC regulation" should support a private right of action. *Rothstein v. Seidman & Seidman*, 410 F.Supp. 244, 249 (S.D.N.Y.1976); *see also* Note, *Implied Private Rights of Action Under Section 6(b) of the Securities Exchange Act of 1934*, 39 Wash. & Lee L.Rev. 1047, 1051 (1982) (As discussed by the Second Circuit in *Colonial Realty Corp.*, "some exchange rules might properly be regarded as a substitute for direct SEC regulation, and that the imposition of civil liability under such rules might be necessary and appropriate to fulfilling the goals of the '34 Act."). The rule specifies what constitutes an excessive load and gives definition to the general prohibition contained in the statute. *Compare Coleman v. D.H. Blair & Co.*, 521 F.Supp. 646, 654 (S.D.N.Y.1981) (§ 6(b) of 1934 Act does not proscribe any conduct by association members weighing against a private right of action). This favors a civil remedy.

Finally, if the rule was enacted for the particular benefit of the investor, this will weigh in favor of implying a private right of action. *Zerman*, 510 F.Supp. at 135 n. 14; *Wellman v. Dickinson*, 475 F.Supp. 783, 835–36 (S.D.N.Y.1979), *aff'd*, 682 F.2d 355 (2d Cir.1982), *cert. denied*, 460 U.S. 1069, 103 S.Ct. 1522, 75 L.Ed.2d 946 (1983). This provision was "intended to assure that the sales loads ... will be established at levels which recognize the interests of investors." House Committee Conference Report No. 91–1631 at 28 (1970), *reprinted in* 5 Fed.Sec.L.Rep. (CCH) ¶ 48,758, at 37,-604 (1984). This factor supports finding a private right of action.

Considering all of the above factors, the court will imply a private right of action under Section 22 to recover the excessive portion of a load.

**b. 15 U.S.C. § 80a–7(a)**

Plaintiffs claim a violation of the ICA in that Merrill Lynch failed to register pursuant to Section 8 of the ICA, 15 U.S.C. § 80a–8. Unregistered companies are subject to the prohibitions of Section 7(a) of the ICA. *See* 15 U.S.C. § 80a–7(a). A private right of action for damages has been found under Section 7(a). *Herpich v. Wallace*, 430 F.2d 792, 813–16 (5th Cir. 1970); *Brown v. Bullock*, 194 F.Supp. 207, 221 (S.D.N.Y.), *aff'd*, 294 F.2d 415 (2d Cir. 1961) (en banc); *see Valles Salgado v. Piedmont Capital Corp.*, 452 F.Supp. 853, 859 (D.P.R.1978) (implied private right of action found, but conduct alleged did not fall under prohibition of § 7); *Reichert v. Bio-Medicus, Inc.*, 70 F.R.D. 71, 74 (D.Minn.1974) (motion for class certification for claim under § 7(a)); *Hirschi v. B & E Securities, Inc.*, 41 F.R.D. 64, 65–66 (D.Utah 1966) (same). Further, shareholders have been able to bring actions to enjoin compliance with the provisions of the ICA, *Cogan v. Johnston*, 162 F.Supp. 907, 909 (S.D.N.Y.1958), or to void transactions that were effected in violation of the Act, *see Avnet, Inc. v. Scope Industries*, 499 F.Supp. 1121, 1127 (S.D.N.Y. 1980). Therefore, under the *Curran* analysis, *supra*, a private right of action for damages as well as for certain equitable relief should be implied for this provision.

One court has determined that there is no private remedy to compel registration under the ICA, *M.J. Whitman & Co. Pension Plan v. American Financial Enterprises, Inc.*, 552 F.Supp. 17, 22 (S.D. Ohio 1982), *aff'd*, 725 F.2d 394 (6th Cir. 1984). While the court agrees that there is no private right of action to compel registration, this determination is based on the absence of any case law providing for such a private right of action and the absence of any congressional intent to imply such a right of action. The *Whitman* decision is not persuasive, however, regarding an implied cause of action for damages. First, the district court did not address whether

there is a private cause of action for damages. Rather, the decision was limited to a private right of action compelling registration. 552 F.Supp. at 18. Second, the court of appeals in *Whitman* specifically declined to address the issue of a private right of action under the ICA and affirmed the decision of the district court on other grounds. 725 F.2d at 395–96. Finally, one commentator has noted that the district court misinterpreted aspects of the ICA's legislative history in reaching its decision. *Implied Rights of Action, supra,* 40 Wash. & Lee L.Rev. at 1087–88. The motion to dismiss with regard to Section 7(a) is granted insofar as plaintiffs seek to compel registration under the ICA and is denied in all other respects.

**c. 15 U.S.C. §§ 80a–10(b) and 15(a, b)**

Plaintiffs also claim that Merrill Lynch acted as a regular broker, advisor, and principal underwriter for the program without a written contract between Merrill Lynch and the TIGR plan in contravention of 15 U.S.C. §§ 80a–10(b) and 15(a, b). These sections are intended to guarantee a measure of objectivity in the management of the investment program.

██ Private parties have brought claims under Section 10(b). *E.g., Levitt v. Johnson,* 222 F.Supp. 805, 806–07 (D.Mass. 1963); *see Ross v. Bernhard,* 396 U.S. 531, 531, 90 S.Ct. 733, 733, 24 L.Ed.2d 729 (1970) (action involved allegations that broker controlled investment company in order to extract excessive commissions); *see also Valles Salgado v. Piedmont Capital Corp.,* 452 F.Supp. at 859 (considers whether defendant's alleged conduct might be actionable under § 10). Under *Curran,* a private cause of action shall be implied under this provision.

Private parties have also maintained actions to ensure compliance with Section 15. *Bloom v. Bradford,* 480 F.Supp. 139, 147 (E.D.N.Y.1979); *see also Cogan v. Johnston,* 162 F.Supp. at 909 (private parties could bring action to enforce duty created by the ICA or to enjoin violation of the ICA). Therefore, plaintiffs may pursue an action to ensure that defendants comply with the provisions of Section 15. Section 15 has also been interpreted to permit a private right of action for damages. *Jerozal v. Cash Reserve Management, Inc.,* [1982–1983 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 99,019, at 94,824–25 (S.D.N.Y. 1982); *see Tannenbaum v. Zeller,* 552 F.2d 402, 415 & n. 17 (2d Cir.), *cert. denied,* 434 U.S. 934, 98 S.Ct. 421, 54 L.Ed.2d 293 (1977).[5] Therefore, the motion to dismiss the claim under Section 15 is denied.

**d. 15 U.S.C. § 80a–17(a)**

██ Plaintiffs claim that defendants violated 15 U.S.C. § 80a–17(a) by selling Treasury Bonds to the TIGRs program. A private right of action has been found to exist for this provision as well. *E.g., Goodall v. Columbia Ventures, Inc.,* 374 F.Supp. 1324, 1327–28 (S.D.N.Y.1974); *Entel v. Allen,* 270 F.Supp. 60, 65 (S.D.N.Y. 1967). Under *Curran,* the private remedy will be maintained.

**e. 15 U.S.C. § 80a–34(a)**

██ Plaintiffs also claim that defendants violated 15 U.S.C. § 80a–34(a), which makes it unlawful for an issuer or seller of a security to represent that the security has been guaranteed by the United States government or any agency thereof. While no reported decision has been found that relates to this subdivision, private plaintiffs

---

**5.** The court in *Tarlov v. Paine Webber Cashfund, Inc.,* 559 F.Supp. 429 (D.Conn.1983), held that there is no private right of action for damages under Section 15. *Id.* at 436. This decision is not persuasive because the analysis was incorrect. The court, based on the trend of recent Supreme Court decisions regarding private rights of action, expressly rejected the existing case law as a basis for supporting a private right of action. *Id.* at 435. The court started from

scratch in determining whether a private right of action was implied under the various provisions of the ICA. *Id.* at 435–37. The court did not consider the Supreme Court decision in *Curran* which would require the court to examine the case law at the time the amendments to the ICA were enacted. If the court had followed the *Curran* analysis, perhaps a different conclusion would have been reached.

have been permitted to bring actions for damages under other subsections of 15 U.S.C. § 80a–34. *See Taussig v. Wellington Fund, Inc.,* 313 F.2d 472, 475–76 (3d Cir.) (action under Section 35(d)), *cert. denied,* 374 U.S. 806, 83 S.Ct. 1693, 10 L.Ed.2d 1031, (1963); *Monheit v. Carter,* 376 F.Supp. 334, 340 (S.D.N.Y.1974) (same). All of the subdivisions in this section relate to misrepresentations. Under these circumstances there is no basis to distinguish between any of the subdivisions. Therefore, a private right of action is appropriate under subdivision (a).

### f. 15 U.S.C. § 80a–36

■ Finally, plaintiffs contend that defendants Merrill Lynch converted money from the TIGR program to plaintiffs' detriment and Merrill Lynch's own gain, in violation of 15 U.S.C. § 80a–36. A private right of action for damages exists for this claim. *See Tannenbaum v. Zeller,* 552 F.2d at 417; *Brown v. Bullock,* 194 F.Supp. at 223. Under *Curran,* this court will continue to imply a private right of action.

### II. PLEADING DAMAGES

Defendants assert that even if a private right of action exists under the ICA, plaintiffs have failed to properly plead an element of their cause of action—damages. Specifically, defendants argue that plaintiffs have merely stated that they have been damaged "as a result" of the abovementioned violations but have failed to allege how they have been damaged. Defendants further argue that nowhere in the complaint do plaintiffs' allege facts showing that the claims arising under the ICA caused a decline in the value of plaintiffs' TIGRs nor have plaintiffs articulated the damages they suffered that were caused by defendant's alleged violations.

■ Defendants' claim is rejected. Plaintiffs' damage claim, although stated in conclusory terms, satisfies the liberal pleading requirement of Rule 8(a) of the Federal Rules of Civil Procedure. *See Quigley v. Hawthorne Lumber Co.,* 264 F.Supp. 214, 220 (S.D.N.Y.1967). Defendants, through pretrial discovery, can ascertain precisely how the plaintiffs were damaged. *Id.* Further, under Rule 9(b) of the Federal Rules, it is the circumstances constituting the fraud or mistake that must be stated with particularity. Here, defendants have not alleged that it does not have notice of the their claimed fraudulent conduct but only that plaintiffs have not pleaded how they were damaged by this fraudulent conduct. However, there is no doubt that the complaint gives defendants clear notice of what they are charged with. *Goldman v. Belden,* 754 F.2d 1059, 1070 (2d Cir.1985). Additional detail can be obtained during the course of discovery. Defendants' motion to dismiss based on inadequacy of the pleading is therefore denied.

### III. MOTION FOR CLASS CERTIFICATION

Plaintiffs have moved for class certification pursuant to Federal Rule of Civil Procedure 23. Defendants have not opposed this motion. The proposed class would consist of all persons other than defendants, who purchased TIGRs from defendants. The requirements under Rule 23(a) which must be fulfilled if this Court is to certify the class are: 1) the class must be so numerous that joinder of all members is impracticable; 2) there must be questions of law or fact common to the class, such that predominate over individual questions; 3) the claims of the representatives must be typical of the claims of the class; 4) the representatives must be able to adequately and fairly protect the interests of the class as a whole.

#### A. *Numerosity*

■ The requirement of numerosity is not one of impossibility or infeasibility of joinder, but rather one of impracticability. *Basile v. Merrill Lynch, Pierce, Fenner & Smith,* 105 F.R.D. 506, 511 (S.D.Ohio 1985). There is no need on the part of plaintiffs to specify the exact number of persons in the proposed class. *See, e.g., Somerville v. Major Exploration, Inc.,* 102 F.R.D. 500, 503 (S.D.N.Y.1984); *Herbst v. Able,* 47

F.R.D. 11, 21 (S.D.N.Y.1969); *Fischer v. Kletz,* 41 F.R.D. 377, 384 (S.D.N.Y.1966). Plaintiffs note that Merrill Lynch sold $18.5 billion face-value worth of TIGRs since 1982. The Court agrees with plaintiffs that there are likely thousands of class members. Additionally, plaintiffs stress that since members are dispersed nationwide, joinder is impracticable. Consequently, the Court finds that the numerosity requirement is satisfied.

### B. *Common Questions*

■ In order to satisfy the common questions requirement, plaintiffs assert questions of law and fact common to the members of the proposed class. Specifically, plaintiffs assert the following questions as common: whether Merrill Lynch made untrue statements or omitted material facts in the sale of TIGRs; whether Merrill Lynch violated provisions of the Securities & Exchange Acts of 1933 and 1934 and the Investment Company Act; whether Merrill Lynch acted intentionally, recklessly, or negligently in so doing.

Such are sufficient to satisfy the common questions requirement. As this Court has stated, the "[e]xistence, materiality, and character of the alleged misrepresentations and omissions constitute common questions." *Dura-Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 93 (S.D.N.Y.1981). *See also Green v. Wolf Corp.,* 406 F.2d 291, 299 (2d Cir.1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *Aboudi v. Daroff,* 65 F.R.D. 388, 390–91 (S.D.N.Y.1974); *Fischer,* 41 F.R.D. at 381–82. Further, these common questions predominate over any individual questions as required by Rule 23(b)(3). *See Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 456 (3d Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978); *Green,* 406 F.2d at 301; *Brady v. Lac Inc.,* 72 F.R.D. 22, 29 (S.D.N.Y.1976); *Aboudi,* 65 F.R.D. at 393; *Mersay v. First Republic Corp.,* 43 F.R.D. 465, 471 (S.D.N.Y.1968); *Fischer,* 41 F.R.D. at 383.

### C. *Typicality*

■ Plaintiffs' claims meet the typicality requirement if they arise from the same course of conduct as do those of the other proposed members of the class and are premised on the same legal bases. Here, the named plaintiffs and members of the proposed class allege fraud and impropriety on the part of defendants and present the same evidence to support their claims. As such, they have satisfied the typicality requirement. *See Handwerger v. Ginsberg,* 519 F.2d 1339 (2d Cir.1975); *Green,* 406 F.2d at 299; *Pellman v. Cinerama, Inc.,* 89 F.R.D. 386, 389 (S.D.N.Y.1981); *Sharp v. Coopers & Lybrand,* 70 F.R.D. 544, 548–49 (E.D.Pa.1976); *In re Caesars Palace Securities Litigation,* 360 F.Supp. 366, 397–99 (S.D.N.Y.1973).

### D. *Fairness and Adequacy*

■ The fairness and adequacy requirement pertains to both the representative and his counsel. Here, the plaintiffs' interests are identical to those of the class and since they have retained competent counsel to represent them, this requirement has been met as well.

Having met the four requirements for class certification, the motion for class certification is hereby granted.

### CONCLUSION

Defendants' motion to dismiss the Section 12(2) claim is granted with respect to the 1983 Group. Plaintiffs have leave to amend the complaint within 10 days.

Defendants' motion to dismiss the claim based on Rule 10b–10 is granted.

Defendants' motion to dismiss the Section 12(2), Section 17 and Rule 10b–5 claims is denied.

Defendants' motion to dismiss the ICA claims is granted in part and denied in part as set forth above.

Plaintiffs' motion for class certification is granted.

SO ORDERED.