Sidney OLMSTED and Johanna Olmsted, On Their Own Behalf and On Behalf of All Others Similarly Situated, Plaintiffs,

v.

PRUCO LIFE INSURANCE COMPANY OF NEW JERSEY and the Prudential Insurance Company of America, Defendants.

No. CV 00–1340(NGG).

United States District Court, E.D. New York.

Oct. 30, 2000.

Paul D. Wexler, Bragar Wexler Eagel & Morgenstern, L.L.P., New York, NY, Jeffrey H. Squire, Kirby McInerey & Squire, L.L.P., New York, NY, for Plaintiffs.

Mark Holland, James N. Benedict, and Mary K. Dulka, Clifford Chance Rogers & Wells, L.L.P., New York, NY, for Defendants.

### MEMORANDUM AND ORDER

GARAUFIS, District Judge.

Plaintiffs filed this putative class action alleging excessive fees charged by a life insurance company. Plaintiffs are holders of Variable Annuity Contracts ("Contracts") issued by Pruco Life Insurance Company and its parent, Prudential Insurance Company, (collectively, "Defendants") since March 10, 1997. Plaintiffs allege that the fees charged by Defendants for the service of managing Plaintiffs' Contracts are excessive under §§ 80a–26(e) and 80a–27(i) of the Investment Company Act of 1940, 15 U.S.C. § 80a–1 *et seq.* (Supp.2000) ("ICA"). For the reasons stated below, Plaintiffs' Complaint is dismissed with prejudice.

### I

Plaintiffs are variable annuity contract holders. (Pl.Compl.¶ 7.) Their Contracts require them to pay monies to Defendants, who, in turn, invest the monies in various investment vehicles chosen by Plaintiffs. Under the Contracts, Defendants promise to make payments to Plaintiffs in the future, generally upon Plaintiffs' death or retirement. (*Id.* ¶ 14.)

For this service, Defendants impose a series of fees on the Plaintiffs: (a) a daily mortality and expense risk charge at the rate of 1.25% per annum; (b) a daily administrative charge at the rate of .15% per annum; and (c) an annual administrative fee of $30 on the anniversary date of the Contract.[1] These fees are imposed upon the total balance of each account of each Plaintiff and are in addition to the management fees charged by the investment advisors who manage the investments for the separate accounts. It is not uncommon for a Plaintiff to pay to Defendants annual fees totaling 1.4% of their assets while also paying additional fees to the investment advisor. (*Id.* ¶ 15.)

As the purported consideration of these insurance charges, Defendants promise that, in the event of a Plaintiff's death prior to the due date of the first annuity payment, Defendants will pay the Plaintiff or his beneficiaries the greater of: (a) the value of his investment in the annuity; or (b) the amount of his or her contributions to the annuity, minus withdrawals. In insurance industry parlance, this guarantee is known as the "death benefit." (*Id.* ¶ 16.)

Plaintiffs contend that the benefit of option (b) is illusory. They aver that (a) will be less than (b) only if the Plaintiff dies shortly after a severe stock market decline and his or her contributions have not been invested long enough to have accumulated a cushion of profit. Plaintiffs further argue that, given the performance of the investments in Defendants' accounts over the last two decades, only an unusual and rare combination of circumstances would lead to (a) being less than (b). (*Id.* ¶¶ 16–17.)

Nevertheless, Defendants impose the fees in question on each Plaintiff's account every day. The fees are a fixed percentage of 1.4% per annum, without relationship to the health or age of the Plaintiff; hence, the costs of maintaining the Contract account are related to the value of the account, not to the risks incumbent on

---

1. Generally, the $30 flat fee is negligible in light of the other fees assessed. For the sake of simplicity, this court will consider the fees in question to total 1.4% per annum.

the insurance company. According to Plaintiffs, virtually all of the monies collected for these fees represent profit to Defendants and are therefore excessive and unreasonable in light of the benefits provided. Plaintiffs suggest a mortality charge of .2% would be fair and reasonable. (*Id.* ¶¶ 18–20.)

Plaintiffs' Complaint states that Defendants have violated §§ 80a–26(e) and 80a–27(i) and that Plaintiffs are entitled to damages for the violation. (*Id.* ¶¶ 21–22.)

Defendants have moved for dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted. Defendants argue four points in support of their position: (1) there is no explicit or implicit private right of action for violations of § 80a–26(e) or 80a–27(i); (2) Plaintiffs' claims are time-barred under a statute of limitations; (3) the Complaint fails to plead facts demonstrating excessiveness as required by Federal Rule of Civil Procedure 8; and (4) Plaintiffs' claims are barred by the New York "filed rate doctrine."

## II

In order for a party to succeed on a motion to dismiss under Rule 12(b)(6), it must be clear that the plaintiff can prove no set of facts that would establish a claim for relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Boyd v. Nationwide Mut. Ins. Co.*, 208 F.3d 406, 409 (2d Cir.2000). When making that determination, a court must assume that the allegations in the complaint are true and draw all reasonable inferences in the plaintiff's favor. *Cooper v. Pate*, 378 U.S. 546, 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964) (per curiam); *Boyd*, 208 F.3d at 409. The court's function on a motion

pursuant to Rule 12(b)(6) is merely to determine whether the complaint itself is legally sufficient to state a claim upon which relief may be granted. *See Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985).

## III

The issue of whether injured parties may initiate civil actions under § 80a–26(e) or 80a–27(i) is a matter of first impression in the federal system. A review of case law reveals only one case which has confronted these subsections, but that case did not actually resolve the question now before this court. *See Levy v. Alliance Capital Mgmt. L.P.*, 189 F.3d 461, No. 98–9528, 1999 WL 642920 (2d Cir. Aug.20, 1999) (dismissing, in an unpublished opinion, the claim on other grounds).[2]

Section 80a–26(e) states, in relevant part: "It shall be unlawful for any registered separate account funding variable insurance contracts, or for the sponsoring insurance company of such account, to sell any such contract-(A) unless the fees and charges deducted under the contract, in the aggregate, are reasonable in relation to the services rendered, the expenses expected to be incurred, and the risks assumed by the insurance company. . . ." 15 U.S.C. § 80a–26(e)(2).

Section 80a–27(i) states, in relevant part: "It shall be unlawful for any registered separate account funding variable insurance contracts, or for the sponsoring insurance company of such account, to sell any such contract unless-(A) such contract is a redeemable security; and (B) the insurance company complies with section 80a–26(e) of this title. . . ." *Id.* § 80a–27(i)(2).

Neither subsection expressly provides for a private right of action. Never-

---

**2.** In fact, it appears that only one other case since 1940 has addressed any part of § 80a–26 or 80a–27. *See Barrett v. Van Kampen*

*Merritt Inc.*, No. 93–C–366, 1993 WL 95382 (N.D.Ill. Mar.30, 1993) (same).

theless, courts may infer a private cause of action if convinced that the legislature intended to imply one. *See, e.g., Cannon v. University of Chicago,* 441 U.S. 677, 717, 99 S.Ct. 1946, 60 L.Ed.2d ·560 (1979) (acknowledging the ability of courts to infer private rights of action where appropriate). This court, therefore, will attempt to navigate the murky and uncertain waters of what Congress may have meant-but did not say. In so doing, this court looks to the Supreme Court for guidance on statutory interpretation.

## IV

Until 1975, courts applied a simple test to determine the availability of an implied remedy. "If a statute was enacted for the benefit of a special class, the judiciary normally recognized a remedy for members of that class. Under this approach, federal courts, following a common-law tradition, regarded the denial of a remedy as the exception rather than the rule." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,.* 456 U.S. 353, 374–75, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982) (citations omitted).

■ In 1975, the Supreme Court decided *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), which transformed the method of interpretation into a more rigid, four-factor analysis of the words and intent of Congress. Those factors include the following: (1) whether the plaintiff is one of the class for whose benefit the statute was enacted; (2) whether there is any indication of legislative intent, explicit or implicit, to create or deny such a remedy; (3) whether the private right of action would be consistent with or frustrate the purposes of the legislative scheme; and (4) whether the cause of action is traditionally relegated to state law remedies. *See Cort,* 422 U.S. at 78, 95 S.Ct. 2080. In subsequent years, the Court has stressed the paramount importance of legislative intent,

while deeming the other factors supplementary. *See, e.g., Thompson v. Thompson,* 484 U.S. 174, 179, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988) ("In determining whether to infer a private cause of action from a federal statute, our focal point is Congress' intent in enacting the statute."); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575–76, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (finding that not all *Cort* factors should be accorded equal weight and that, in fact, the central inquiry is congressional intent); *Thompson,* 484 U.S. at 189, 108 S.Ct. 513 (Scalia, J., concurring) (calling congressional intent "the determinative factor, with the other three merely indicative of its presence or absence"); *see also McClellan v. Cablevision of Conn., Inc.,* 149 F.3d 161, 164 (2d Cir.1998) (noting that the Supreme Court has refocused the *Cort* analysis to emphasize the importance of congressional intent). Hence, this court must focus on the intent of Congress in enacting §§ 80a–26(e) and 80a–27(i).

## V

■ The inquiry begins with the language of the statute itself. *See Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 16, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Touche Ross,* 442 U.S. at 568, 99 S.Ct. 2479. Both § 80a–26(e) and § 80a–27(i) lead with the phrase "It shall be unlawful." The Supreme Court has both found and rejected implied private rights of action under other statutes with this precise language. *See, e.g., Transamerica Mortgage,* 444 U.S. at 24, 100 S.Ct. 242 (rejecting an implied right of action for damages in § 206 of the Investment Advisors Act, 15 U.S.C. § 80b–1 *et seq.* (1940)); *J.I. Case Co. v. Borak,* 377 U.S. 426, 435, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) (finding an implied right of action in § 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n(a) (1934)). But there is no question that the phrase "it shall be unlawful" merely prohibits certain con-

duct; it does not in its terms create or alter any civil remedies. Thus, if a private right of action is to be found, it must be read into these sections. "Yet it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica Mortgage,* 444 U.S. at 19, 100 S.Ct. 242.

In fact, Congress has expressly provided for a particular entity to bring civil actions to enforce compliance with sections of the ICA. Congress granted the Securities and Exchange Commission ("SEC") broad regulatory powers under the ICA. Section 80a–41 explicitly permits the SEC to investigate violations, subpoena witnesses, promulgate rules, and bring civil actions in federal court for injunctions or civil penalties.[3] *See* 15 U.S.C. § 80a–41. Nowhere does that enforcement section intimate that private parties are also authorized to sue for civil remedies. In view of § 80a–41's comprehensive enforcement provisions expressly designating the SEC as the regulatory entity, it is highly improbable that "Congress absentmindedly forgot to mention an intended private action" as a supplemental enforcement mechanism. *Cannon,* 441 U.S. at 742, 99 S.Ct. 1946 (Powell, J., dissenting).

Moreover, when Congress wanted to supplement the SEC's enforcement authority with a private right of action, it knew how to do so. Section 80a–35(b) contains the ICA's one explicit authorization for a private right of action: "An action may be brought under this subsection by the Commission, or by a security holder of such registered investment company on behalf of such company." 15 U.S.C. § 80a–35(b) (allowing private parties to sue for a breach of fiduciary duty). Congress added the private right of action of § 80a–35(b) when it amended the ICA in 1970. *See* Pub.L. 91–547 § 20(b), 84 Stat. 1428 (Dec. 14, 1970). Its failure in 1996 to amend §§ 80a–26 and 80a–27 with similar language strongly suggests that Congress was simply unwilling to subject variable insurance contracts to the burdens and costs of private actions.

■ This court's review of the legislative history of the 1996 amendments confirms that Congress did not intend to permit private actions under § 80a–26(e) or 80a–27(i). The ICA was amended in 1996 by Title II of the National Securities Markets Improvement Act of 1996, Pub.L. No. 104–290, 110 Stat. 3416 (1996) ("Improvement Act"), *reprinted in* 1996 U.S.C.C.A.N. 3416–51. The Improvement Act and its legislative history are wholly devoid of language creating a private cause of action for a violation of its amended ICA sections. *See, e.g.,* H.R. Conf. Rep. No. 104–864 (1996), U.S.Code Cong. & Admin.News 1996, p. 3920; S.Rep. No. 104–293 (1996); H.R.Rep. No. 104–622 (1996), U.S.Code Cong. & Admin.News 1996, p. 3877. Instead, the Improvement Act's legislative history clearly demonstrates that Congress' purpose was to streamline and simplify regulation of investment companies to eliminate unnecessary costs on those companies which otherwise would be passed on to individual investors.[4] Permit-

---

**3.** Additionally, Congress gave the Attorney General express authority to initiate criminal actions for egregious violations. *See* 15 U.S.C. § 80a–41(d).

**4.** The following is just one example of the many passages in the congressional reports which indicate Congress' focus on streamlined and efficient regulation. "The Invest-

ment Company Act has not, however, undergone significant change in response to the developments in the industry; the Act has been amended significantly only once, in 1970. Accordingly, certain of the Act's provisions have become outdated and unduly burdensome, imposing unnecessary costs on funds and impeding innovation in the industry. The costs borne by the industry are

ting private parties to sue under the amended sections would contravene Congress' goal of achieving simple and flexible regulation. Compelling individual federal courts to intercede as additional regulators of the "reasonableness" of fees would instead complicate the regulatory oversight of investment companies. Congress specifically designated the SEC, a single and informed arbiter knowledgeable of investment issues, to determine fee reasonableness in order to streamline the regulation of and establish continuity in the variable insurance fund market. It is thus highly doubtful that Congress intended simultaneously to simplify variable insurance regulation and to complicate it with potentially redundant and extensive private actions brought in federal court.

This court concludes that the language of §§ 80a–26(e) and 80a–27(i), their context within the ICA, and their legislative background resolve the inquiry of congressional intent. Congress did not intend to give investors a private right of action under those subsections. To infer otherwise would encroach upon the powers of legislation reserved for Congress. This court will not graft onto §§ 80a–26(e) and 80a–27(i) a remedy which Congress did not intend to provide. *See California v. Sierra Club,* 451 U.S. 287, 297, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981). Accordingly, this court holds that no private right of action for injured investors exists under either § 80a–26(e) or 80a–27(i) of the ICA.

## VI

Having found that Congress did not intend to imply a private right of action

passed on to shareholders in the form of lower returns on their investments and reduced flexibility in investment options.... The legislation also clarifies and refines the regulation of variable insurance products, which are currently subject to anomalous regulatory requirements arising from the application of principles in the Investment Compa-

under § 80a–26(e) or 80a–27(i), this court need not go further. *See Transamerica Mortgage,* 444 U.S. at 24, 100 S.Ct. 242 ("Having answered that question in the negative, our inquiry is at an end."). Nevertheless, Plaintiffs have advanced three arguments in opposition to this holding. None persuade this court to reach the conclusion Plaintiffs advocate.

■ First, Plaintiffs assert that they are members of a class of persons whom Congress sought to protect with §§ 80a–26(e) and 80a–27(i). That the plaintiffs are those whom Congress sought to protect is one of the four *Cort* factors. *See Cort,* 422 U.S. at 78, 95 S.Ct. 2080. This factor may support an inference of a private right of action when congressional intent is not otherwise apparent. *See, e.g., Cannon,* 441 U.S. at 689–91, 99 S.Ct. 1946; *McClellan,* 149 F.3d at 165–66. Having resolved the issue of congressional intent in this case, however, this *Cort* factor has little interpretive value. *See Curran,* 456 U.S. at 388, 102 S.Ct. 1825 ("[T]here is no need for us to 'trudge through all four of the factors when the dispositive question of legislative intent has been resolved.'") (quoting *Sierra Club,* 451 U.S. at 302, 101 S.Ct. 1775 (Rehnquist, J., concurring)); *see also Transamerica Mortgage,* 444 U.S. at 24, 100 S.Ct. 242 ("[T]he mere fact that the statute was designed to protect advisers' clients does not require the implication of a private cause of action for damages on their behalf.").

Even were this *Cort* factor a required consideration, it would not favor Plaintiffs. Plaintiffs are undoubtedly correct that

ny Act that are not suited to these products, which did not exist at the time the Act was enacted.... The bill also would ease the regulations on the amount of fees that insurance companies could charge to customers who buy variable annuities." H.R.Rep. No. 104–622, at 17, 23, *reprinted in* 1996 U.S.C.C.A.N. 3879–80, 3885.

they are members of a class whom Congress, through enactment of §§ 80a–26(e) and 80a–27(i), sought to protect from detrimentally excessive fees. Logically, however, the fact that the plaintiffs are those whom Congress sought to protect only supports the existence of an implied private right of action if Congress suspected that private actions would actually benefit the protected class. In this case, it is far from certain that a private remedy would indeed benefit the protected class of annuitants. As explained above, the SEC is the designated regulatory enforcer of the ICA provisions. Its expertise in and knowledge of investment funds far exceeds those of the district courts. It would be highly speculative to assume that sporadic regulation through private rights of action in federal court would not actually complicate and burden those provisions designed to protect the investors. Therefore, while Plaintiffs clearly fall within a class of persons protected by §§ 80a–26(e) and 80a–27(i), it does not follow that allowing them to bring suit would enhance the protection of that class.

Second, Plaintiffs assert that the legislative history behind the 1980 amendments to the ICA evince a broad legislative intent that courts infer private rights of action throughout the ICA. That year, Congress amended the ICA with the Small Business Investment Incentive Act of 1980, Pub.L. No. 96–477, 94 Stat. 2275 (1980) ("Incentive Act"). The House Report on the Incentive Act states: "[I]n recent years, the Supreme Court turned its focus toward a strict construction of statutory language and expressed intent. The Committee wishes to make plain that it expects the courts to imply private rights of action under *this legislation*, where the plaintiff

falls within the class of persons protected by the statutory provision in question. Such a right would be consistent with and further Congress' intent in enacting that provision...." H.R.Rep. No. 1341, at 28–29 (1980) (emphasis added), *reprinted in* 1980 U.S.C.C.A.N. 4800, 4810–11. This language has little bearing on the interpretation of §§ 80a–26(e) and 80a–27(i) in this case. Neither § 80a–26 nor § 80a–27 were amended in 1980,[5] nor were they referenced in the 1980 legislative history, and therefore they are not part of "this legislation" to which the 1980 Committee language refers. Furthermore, this court is loathe to impute to the whole of Congress in 1996 what was stated in a report by the House Committee on Interstate and Foreign Commerce in 1980. *See Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 185, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) (" '[T]he interpretation given by one Congress (or a committee or Member thereof) to an earlier statute is of little assistance in discerning the meaning of that statute.' ") (quoting *Public Employees Retirement Sys. of Ohio v. Betts*, 492 U.S. 158, 168, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989)). The existence of an implied private right of action under §§ 80a–26(e) and 80a–27(i) is unsupported by such congressional dicta.

■ Lastly, Plaintiffs disclose an abundance of caselaw which has found implied private rights of action under other sections of the ICA. Those holdings do not contravene this court's conclusion. It is true that an important index of congressional intent can involve how Congress would have expected courts to interpret new amendments based on its knowledge of how courts had interpreted similar sec-

---

5. Section 80a–26 was amended in 1970, 1987, and 1996. *See* Pub.L. No. 104–290, § 205(a) (1996); Pub.L. No. 100–181, § 618 (1987); Pub.L. No. 91–547, § 15(a) (1970). Section

80a–27 was amended in 1970, 1971, and 1996. *See* Pub.L. No. 104–290, § 205(b) (1996); Pub.L. No. 92–165 (1971); Pub.L. No. 91–547 (1970).

tions of the statute before the amendments. *See, e.g., Curran,* 456 U.S. at 378–82, 102 S.Ct. 1825 (holding, in part because other courts had consistently inferred private rights of action conferred by the Commodity Exchange Act as a whole, that that statute permits a private right of action); *Cannon,* 441 U.S. at 702–03, 99 S.Ct. 1946 (finding significant, in holding that Title IX creates an implied private right of action, the fact that courts had consistently found implied private rights of action in the statute prior to congressional revisitation); *McClellan,* 149 F.3d at 166 (finding congressional intent to imply a private cause of action under § 531(e) of the Cable Communications Policy Act when three district courts had found an implied private right of action under § 531(e) and Congress, in amending the statute, did not explicitly reject their interpretation).

From its inception until the 1996 amendments, courts had consistently, although not unanimously, inferred private rights of action for violations of the ICA. *See, e.g., Meyer v. Oppenheimer Mgmt. Corp.,* 764 F.2d 76 (2d Cir.1985) (§§ 15(f), 36); *Bancroft Convertible Fund, Inc. v. Zico Investment Holdings Inc.,* 825 F.2d 731 (3d Cir. 1987) (§ 12(d)(1)(A)); *In re Nuveen Fund Litig.,* No. 94–C–360, 1996 WL 328006 (N.D.Ill. June 11, 1996) (§§ 36(a), 34(b)); *Langner v. Brown,* 913 F.Supp. 260 (S.D.N.Y.1996) (§§ 10(a), 36(b), 17(a), 17(d)); *Blatt v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 916 F.Supp. 1343 (D.N.J.1996) (§§ 7(d), 13(a)(3)); *Carr v. Equistar Offshore, Ltd.,* No. 94–Civ.–5567, 1995 WL 562178 (S.D.N.Y. Sept.21, 1995)

(§ 7); *Seidel v. Lee,* No. Civ–A.–93–494 (JJF), 1994 WL 913930 (D.Del. Oct. 14, 1994) (§§ 36(a), 56(a), 57(a), 57(d), 17(j)); *In re ML–Lee Acquisition Fund II, L.P,* 848 F.Supp. 527 (D.Del.1994) (§§ 17(j), 36, 48, 57); *Krome v. Merrill Lynch & Co.,* 637 F.Supp. 910 (S.D.N.Y.1986) (§§ 7(a), 10(b), 15, 17(a), 22, 34(a), 36).[6] *But see Potomac Capital Mkts. Corp. v. Prudential–Bache Corp. Dividend Fund, Inc.,* 726 F.Supp. 87 (S.D.N.Y.1989) (finding no private right of action under § 25(a) or § 13(a)(4)).

Between the time of their enactment in 1940 and their amendment in 1996, however, only one court had ever even commented on the possibility of a private cause of action under §§ 80a–26 and 80a–27. *See Barrett,* 1993 WL 95382. Thus, when amending those sections in 1996 to add §§ 80a–26(e) and 80a–27(i), Congress confronted statutory sections virtually unmarked by judicial interpretation. The mere fact that courts have interpreted other ICA sections to imply private rights of action does not compel the conclusion that Congress intended §§ 80a–26(e) and 80a–27(i) to be interpreted the same way. Subsections 80a–26(e) and 80a–27(i) address exceptions made specifically for variable insurance contracts and unit investment trusts, financial vehicles different in many respects from other funds covered by the ICA. *See, e.g.,* H.R.Rep. No. 104–622, at 45 ("The [1996] legislation recognizes that variable insurance contracts and periodic payment plan certificates are different products that should not be treated identically under the [ICA] ...."), *reprint-*

---

**6.** Other courts have assumed, without actually being confronted with the issue, that a private right exists under the particular sections of the ICA. *See Fogel v. Chestnutt,* 668 F.2d 100, 105 (2d Cir.1981) (finding insufficient grounds for departing from the law of the case which assumed a private right exists), *cert. denied,* 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982); *Moses v. Burgin,* 445

F.2d 369, 373 (1st Cir.1971) (§ 36) (noting that the defendants did not contest the issue); *Brown v. Bullock,* 294 F.2d 415, 421 (2d Cir. 1961) (§§ 37, 15(a), 15(b)) (assuming, without being presented with the issue, that a cause of action exists); *Merine v. Prudential–Bache Utility Fund, Inc.,* 859 F.Supp. 715, 718 (S.D.N.Y.1994) (§ 20(a)) (summarily asserting that an implied right of action exists).

*ed in* 1996 U.S.C.C.A.N. 3908. Thus, it does not follow that the existence of implied private rights of action in other sections of the ICA requires a finding that §§ 80a–26(e) and 80a–27(i) also incorporate implicit private rights of action. And, because Congress was legislating on a clean slate with respect to §§ 80a–26 and 80a–27, its silence in 1996 with respect to private rights of action for these sections does not now support their inference. Hence, Plaintiffs' third argument, like their first two, is unconvincing.

## VII

This court holds that no private right of action for injured investors exists under § 80a–26(e) or 80a–27(i) of the ICA. As such, Plaintiffs are not entitled to relief under these statutory provisions, and their Complaint must be dismissed for failure to state a claim upon which relief may be granted. Because Defendants' motion succeeds on that ground, this court has no occasion to consider the other arguments in support of Defendants' motion. Accordingly, Defendants' motion to dismiss is GRANTED, and Plaintiffs' Complaint is DISMISSED with prejudice.

SO ORDERED.