283 F.3d 429
 Sidney OLMSTED and Johanna Olmsted, on their own behalf and on behalf of all others similarly situated, Plaintiffs-Appellants,
v.
PRUCO LIFE INSURANCE COMPANY OF NEW JERSEY and the Prudential Insurance Company of America, Defendants-Appellees.
 Docket No. 00-9511.
 United States Court of Appeals, Second Circuit.
 Argued September 4, 2001.
 Decided March 7, 2002.
 
 Jeffrey H. Squire, Kirby McInerney & Squire, LLP, New York, NY (Paul D. Wexler, Bragar, Wexler, Eagel & Morgenstern, LLP, New York, NY, on the brief), for Plaintiffs-Appellants.
 Mark Holland, Clifford Chance Rogers & Wells LLP, New York, NY (James N. Benedict, Mary K. Dulka, C. Neil Gray, on the brief; Leonard P. Novello, Stephen Parker, The Prudential, Newark, NJ, of counsel), for Defendants-Appellees.
 David M. Becker, General Counsel, Meyer Eisenberg, Deputy General Counsel, Jacob H. Stillman, Solicitor, Mark Pennington, Assistant General Counsel, Christopher Paik, Special Counsel, Washington, DC, the Securities and Exchange Commission, Amicus Curiae.
 Before: NEWMAN, CALABRESI, and SACK, Circuit Judges.
 SACK, Circuit Judge.
 
 
 1
 Plaintiffs Sidney and Johanna Olmsted appeal from a judgment of the United States District Court for the Eastern District of New York (Nicholas G. Garaufis, Judge) granting the defendants' Fed. R.Civ.P. 12(b)(6) motion to dismiss the complaint for failure to state a claim upon which relief can be granted. The plaintiffs allege that the defendants violated §§ 26(f) and 27(i) of the Investment Company Act of 1940, 15 U.S.C. § 80a-1 et seq. (Supp. 2001) (the "ICA"), by imposing upon the plaintiffs, who are holders of certain variable annuity contracts, fees, charges, and expenses that are excessive and unreasonable in relation to the services provided, the expenses to be incurred, and the risks assumed. We affirm the judgment of the district court because we agree with its conclusion that Congress did not intend to create a private right of action for violations of §§ 26(f) and 27(i).
 
 BACKGROUND
 
 2
 The plaintiffs are holders of "variable annuity" insurance contracts issued by the defendants. Compl. ¶ 2. Such contracts combine features of a mutual fund and a life insurance policy. A contract holder makes periodic payments into an account maintained by the issuer and consisting of various investments, such as mutual funds, selected by the holder. Compl. ¶ 14. The holder continues to make payments until a pre-selected maturity date, at which time he or she receives a payout in the form of either a lump-sum payment or a lifetime annuity. The contracts are "variable" because payouts depend on the market performance of the investments in the holder's account, as contrasted with the "fixed" payout of a traditional insurance policy.
 
 
 3
 The plaintiffs' contracts also include a feature called a "death benefit." Compl. ¶ 16. Under it, a holder who dies before the maturity date receives from the issuer a payment equal to the greater of (a) the value of the assets in the holder's investment account, and (b) the sum of the amounts of the holder's periodic payments before his or her death. Id.
 
 
 4
 The defendants identify three risks they assume in issuing the contracts. First, they assert that they assume a risk under the "death benefit" that they might be required to cover for a decline in the value of the contract holder's investments. Second, they aver that they assume a mortality risk, in that a contract holder might select the lifetime annuity payout option and then live longer than expected. Third, they allege that they assume an "expense risk," in that the expenses associated with administering the contracts might exceed the fixed annual expense charge. For these asserted risks assumed and other services provided, the defendants' total annual compensation under the contracts is 1.4% of the assets in each contract holder's account.[1]
 
 
 5
 On March 8, 2000, the plaintiffs brought a class action in the United States District Court for the Eastern District of New York on behalf of all persons who purchased variable annuity contracts from the defendants on or after March 1, 1997. Compl. ¶ 7. The complaint alleges that the defendants have violated §§ 26(f) and 27(i) of the ICA because the fees they charge on their variable annuity contracts are "excessive and unreasonable in relation to the services provided, the expenses to be incurred and risks assumed...." Id. ¶ 21.[2] On October 30, 2000, the district court granted the defendants' motion under Fed. R.Civ.P. 12(b)(6) to dismiss the plaintiffs' complaint. Olmsted v. Pruco Life Ins. Co. of New Jersey, 134 F.Supp.2d 508, 517 (E.D.N.Y.2000). In a thorough and well-reasoned opinion, Judge Garaufis concluded that the ICA does not provide a private right of action for violations of §§ 26(f) and 27(i) and that the plaintiffs' complaint must be dismissed for failure to state a claim upon which relief can be granted. Id.
 
 
 6
 The plaintiffs appealed, asserting that the district court erred in concluding that the ICA does not provide a private right of action for violations of §§ 26(f) and 27(i). The defendants argue that the district court was correct and that the plaintiffs' complaint also should be dismissed (i) as time-barred, (ii) for failure to allege sufficient facts, and (iii) as barred by the filed-rate doctrine.
 
 DISCUSSION
 I. Standard of Review
 
 7
 We review de novo a district court's dismissal of a complaint under Fed R. Civ. P. 12(b)(6), accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiffs' favor. Kalnit v. Eichler, 264 F.3d 131, 137-38 (2d Cir.2001).
 
 II. Congressional Intent
 
 8
 The Supreme Court has established that courts must look to the intent of Congress in determining whether a federal private right of action exists for violations of a federal statute. "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." Alexander v. Sandoval, 532 U.S. 275, 286, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). Without congressional intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." Id. at 286-87, 121 S.Ct. 1511.
 
 
 9
 Determining congressional intent to create a right of action is therefore a matter of statutory interpretation. Id. at 286, 121 S.Ct. 1511 ("Statutory intent ... is determinative."). A court must "begin [its] search for Congress's intent with the text and structure" of the statute, id. at 288, 121 S.Ct. 1511, and cannot ordinarily conclude that Congress intended to create a right of action when none was explicitly provided. See, e.g., Touche Ross & Co. v. Redington, 442 U.S. 560, 571, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) ("[I]mplying a private right of action on the basis of congressional silence is a hazardous enterprise, at best."); West Allis Mem'l Hosp. v. Bowen, 852 F.2d 251, 254 (7th Cir.1988) ("A strong presumption exists against the creation of... implied rights of action.").
 
 
 10
 No provision of the ICA explicitly provides for a private right of action for violations of either § 26(f) or § 27(i), and so we must presume that Congress did not intend one. This presumption is strengthened by three additional features of the statute.
 
 
 11
 First, §§ 26(f) and 27(i) do not contain rights-creating language. Section 26(f) provides:
 
 
 12
 It shall be unlawful for any ... account funding variable insurance contracts, or for the sponsoring insurance company of such account, to sell any such contract —
 
 
 13
 (A) unless the fees and charges deducted under the contract, in the aggregate, are reasonable....
 
 
 14
 15 U.S.C. § 80a-26(f). And § 27(i)(2) provides:
 
 
 15
 It shall be unlawful for any ... account funding variable insurance contracts, or for the sponsoring insurance company of such account, to sell any such contract unless —
 
 
 16
 ....
 
 
 17
 (B) the insurance company complies with section 80a-26[f] of this title and any rules or regulations issued by the Commission under section 80a-26[f] of this title. 15 U.S.C. 80a-27(i)(2). The language of these sections only describes actions by insurance companies that are prohibited; it does not mention investors such as the plaintiffs. "Statutes that focus on the person regulated rather than the individuals protected create `no implication of an intent to confer rights on a particular class of persons.'" Sandoval, 532 U.S. at 289, 121 S.Ct. 1511 (quoting California v. Sierra Club, 451 U.S. 287, 294, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981)).
 
 
 18
 Second, § 42 of the ICA (15 U.S.C. § 80a 41) explicitly provides for enforcement of all ICA provisions, including §§ 26(f) and 27(i), by the Securities and Exchange Commission ("SEC") through investigations and civil suits for injunctions and penalties. See 15 U.S.C. § 80a-41. In Sandoval, the Supreme Court observed that:
 
 
 19
 The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.... Sometimes the suggestion is so strong that it precludes a finding of congressional intent to create a private right of action, even though other aspects of the statute ... suggest the contrary.
 
 
 20
 532 U.S. at 290, 121 S.Ct. 1511 (internal citations omitted).
 
 
 21
 Third, Congress explicitly provided in § 36(b) of the ICA for a private right of derivative action for investors in regulated investment companies alleging that investment advisors breached certain fiduciary duties. 15 U.S.C. § 80a-35(b). Congress's explicit provision of a private right of action to enforce one section of a statute suggests that omission of an explicit private right to enforce other sections was intentional. "Obviously ... when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly." Touche Ross, 442 U.S. at 572, 99 S.Ct. 2479.[3]
 
 
 22
 We therefore conclude that the ICA's text creates a strong presumption that Congress did not intend to create private rights of action for violations of §§ 26(f) and 27(i).
 
 III. Other Factors in the Analysis
 
 23
 A strong presumption that Congress did not intend a private right of action places a heavy burden on the plaintiffs to demonstrate otherwise. See Victorian v. Miller, 813 F.2d 718, 721 (5th Cir.1987) ("To establish an implied private right of action under a federal statute, a plaintiff bears the relatively heavy burden of demonstrating that Congress affirmatively contemplated private enforcement when it passed the relevant statute."). The plaintiffs raise a series of arguments in an attempt to rebut the presumption.
 
 
 24
 They argue that a failure by this Court to recognize a private right of action to enforce §§ 26(f) and 27(i) would constitute an ill-advised break with a long line of decisions recognizing implied private rights of action as a way of promoting the policies served by the ICA. The plaintiffs correctly note that an overwhelming majority of courts interpreting the ICA have recognized implied private rights of action to enforce many of its sections.[4] When those cases were decided, however, courts had more latitude to weigh statutory policy and other considerations than they do now. Before 1975, courts generally recognized an implied private right of action in any federal statute "enacted for the benefit of a special class." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran, 456 U.S. 353, 374, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982). Although the Supreme Court adopted a more structured approach in Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), it nonetheless held that legislative intent was only one of several factors that courts could consider in the analysis. Id. at 78, 95 S.Ct. 2080 (in determining existence of a federal private right of action, courts may consider (1) whether the plaintiff is "one of the class for whose especial benefit the statute was enacted," (2) whether there is "any indication of legislative intent, explicit or implicit," to create or deny such a remedy, (3) whether the private cause of action would be "consistent with the underlying purposes of the legislative scheme," and (4) whether the cause of action is "one traditionally relegated to state law" (emphasis in original; internal quotation marks omitted)). In a series of recent decisions, however, the Supreme Court has reduced the importance of the Cort factors other than legislative intent, first by characterizing them as mere tools for determining legislative intent, see Touche Ross, 442 U.S. at 575-76, 99 S.Ct. 2479, and then by subordinating them to statutory text as interpretive sources, see, e.g., Northwest Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO, 451 U.S. 77, 91, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981). Past decisions reflecting judicial willingness to "make effective [statutory] purpose" in the context of implied rights of action belong to an "ancien regime." Sandoval, 532 U.S. at 287, 121 S.Ct. 1511 (internal quotation marks omitted).
 
 
 25
 We also reject the plaintiffs' argument that when Congress added §§ 26(f) and 27(i) to the ICA in 1996 it expected courts to recognize implied rights of action to enforce them because courts had recognized other implied rights under the ICA in the past.
 
 
 26
 [W]e [do not] agree ... that our cases interpreting statutes enacted prior to Cort v. Ash have given dispositive weight to the expectations that the enacting Congress had formed in light of the contemporary legal context.... We have never accorded dispositive weight to context shorn of text. In determining whether statutes create private rights of action, as in interpreting statutes generally,... legal context matters only to the extent it clarifies text.
 
 
 27
 Id. (internal citations and quotation marks omitted). A statutory provision that does not use rights-creating language, in a statute that provides for other remedies and contains explicit private rights of action to enforce other sections, creates no ambiguity on the question of an implied private right of action that legal context might clarify. Where a statute is unambiguous as we use that term here, the context in which it was passed does not matter.
 
 
 28
 The plaintiffs next argue that two pieces of legislative history suggest that Congress intended courts to recognize implied private rights of action to enforce §§ 26(f) and 27(i). First, the plaintiffs point to a House of Representatives committee report accompanying the 1980 amendments to the ICA (which did not contain §§ 26(f) and 27(i)) stating that the committee "expects the courts to imply private rights of action under this legislation." H.R.Rep. No. 96-1341, at 29 (1980), reprinted in 1980 U.S.C.C.A.N. 4800, 4811. Second, the plaintiffs cite to a House committee report accompanying the 1996 ICA amendments (which did add §§ 26(f) and 27(i)) that states that the new provisions subject variable insurance contracts to "more general prohibitions against excessive fees, similar to the way mutual funds are treated under the Act." H.R.Rep. No. 104-622, at 45 (1996), reprinted in 1996 U.S.C.C.A.N. 3877, 3908. This report is relevant, the plaintiffs argue, because mutual funds are regulated under § 36(b), which, as we have indicated, explicitly provides for private remedies. The plaintiffs read this report to signify that Congress intended that its prohibitions on excessive fees on variable insurance contracts be enforced through the same means used to punish excessive mutual fund fees.
 
 
 29
 The plaintiffs' appeal to legislative history suffers from the same shortage of statutory ambiguity that mars their "legal context" argument. Where the text of a statute is unambiguous, "judicial inquiry is complete[] except in rare and exceptional circumstances," and legislative history instructive only upon "the most extraordinary showing of contrary intentions." Garcia v. United States, 469 U.S. 70, 75, 105 S.Ct. 479, 83 L.Ed.2d 472 (1985) (internal quotation marks omitted). A report prepared by a House committee on one piece of legislation cannot constitute an "extraordinary showing" of congressional intent for different legislation passed sixteen years later, and so the legislative history of the 1980 amendments does not disturb the presumption that arises from the text of sections added in 1996. And the analogy drawn in the 1996 legislative history between the "treatment" of variable insurance contracts and mutual funds under the ICA demonstrates no contradictory intent regarding remedies, especially where the language itself indicates that the analogy refers to that which is prohibited rather than how that prohibition will be enforced.
 
 
 30
 Finally, we reject the plaintiffs' argument that Congress must have intended §§ 26(f) and 27(i) to be enforceable through private rights of action because Congress did not allocate enough money to the SEC to do the job by itself. Even were we able to assess the adequacy of the SEC's funding relative to its mandate, a method of determining statutory intent based on fluctuating annual budget allocations would resemble divination more than analysis. There is no basis whatever upon which to conclude that Congress wished us to determine statutory meaning based on the magnitude of its appropriations to the agency charged with the statute's enforcement.[5]
 
 
 31
 Because we hold that the ICA does not provide for a private right of action for violations of §§ 26(f) and 27(i), we do not reach the defendants' alternative arguments for dismissing the complaint.
 
 CONCLUSION
 
 32
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 Notes:
 
 
 [1]
 The plaintiffs allege that the defendants also charge a $30 annual administrative fee. Compl. ¶ 15
 
 
 [2]
 The plaintiffs' complaint and the district court's decision both identify the ICA sections that the plaintiffs allege were violated as 26(e) and 27(i). In late 1999, however, Congress amended the ICA, with the result that the former § 26(e) is now § 26(f)See Gramm-Leach-Bliley Act, Pub.L. No. 106-102, Title II, § 211(b), 113 Stat. 1338, 1396 (1999). We refer to the relevant sections under their current statutory designations.
 
 
 [3]
 The plaintiffs argue that drawing this inference from § 36(b) is precluded by our holding inFogel v. Chestnutt, 668 F.2d 100 (2d Cir.1981), cert. denied, 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982). However, in Fogel we merely assumed that when Congress added § 36(b) to the ICA in 1970 it did not intend to overrule previous decisions recognizing implied rights of action in the statute. Id. at 111. The instant case is distinguishable because no court of which we are aware has recognized a private right of action to enforce §§ 26(f) and 27(i). Certainly no court could have done so before 1970 because these sections were not added to the ICA until 1996. See National Securities Markets Improvement Act of 1996, Pub.L. No. 104-290, §§ 205(a),(b), 110 Stat. 3416, 3429. We express no opinion on the current validity of our assumption in Fogel because in this case we interpret sections added after Congress created the private right of action in § 36(b).
 
 
 [4]
 See, e.g., Bancroft Convertible Fund, Inc. v. Zico Inv. Holdings, Inc., 825 F.2d 731, 736 (3d Cir.1987) (recognizing implied private right of action for violations of § 12(d)(1)(A)); Meyer v. Oppenheimer Mgmt. Corp., 764 F.2d 76, 88 (2d Cir.1985) (§ 15(f)); McLachlan v. Simon, 31 F.Supp.2d 731, 737 (N.D.Ca.1998) (§ 36(a)); Young v. Nationwide Life Ins. Co., 2 F.Supp.2d 914, 926 (S.D.Texas 1998) (same); Strougo v. Scudder, Stevens, & Clark, Inc., 964 F.Supp. 783, 798 (S.D.N.Y.1997) (same); In re Nuveen Fund Litig., No. 94-C-360, 1996 WL 328006, at *6, 1996 U.S. Dist. LEXIS 8071, at *17 (N.D.Ill. June 11, 1996) (§§ 34(b), 36(a)); Blatt v. Merrill Lynch, Pierce, Fenner & Smith Inc., 916 F.Supp. 1343, 1349, 1357 (D.N.J.1996) (§§ 7(d), 13(a)(3)); Langner v. Brown, 913 F.Supp. 260, 267 (S.D.N.Y.1996) (§ 10(a)); Carr v. Equistar Offshore, Ltd., No. 94-Civ.-5567, 1995 WL 562178, at *15, 1995 U.S. Dist. LEXIS 13703, at *44-*45 (S.D.N.Y. Sept.21, 1995) (§ 7(d)); Seidel v. Lee, No. Civ A. 93-494, 1994 WL 913930, at *2, 1994 U.S. Dist. LEXIS 21534, at *8-*9 (D.Del. Oct. 14, 1994) (§§ 17(j), 36(a), 56(a), 57(a), 57(d)); In re ML-Lee Acquisition Fund II, L.P., 848 F.Supp. 527, 539-45 (D.Del.1994) (§§ 17(j), 36(a), 48, 57); Krome v. Merrill Lynch & Co., 637 F.Supp. 910, 917-20, vacated in part, 110 F.R.D. 693 (S.D.N.Y. 1986) (§§ 7(a), 10(b), 15, 17(a), 22, 34(a), 36). Against this impressive lineup stand only the decision of the district court in this case and two others: Potomac Capital Mkts. Corp. v. Prudential-Bache Corp. Dividend Fund, Inc., 726 F.Supp. 87, 91-94 (S.D.N.Y.1989) (denying rights of action under §§ 13(a)(4), 25(a), although recognizing private right to enforce § 13(a)(3)); M.J. Whitman & Co. v. Am. Fin. Enter., Inc., 552 F.Supp. 17, 22 (S.D.Ohio 1982), aff'd, 725 F.2d 394 (6th Cir.1984) (no general private right of action against companies failing to register under ICA).
 
 
 [5]
 This Court asked the SEC for anamicus curiae brief on the private right of action issue presented by this appeal. The SEC declined to respond to our inquiry regarding §§ 26(f) and 27(i) of the ICA on the grounds that the SEC considers § 47(b) of the ICA (15 U.S.C. § 80a-46(b)) to provide a basis for the plaintiffs' claims. Because the plaintiffs make no claim under § 47(b), and because an issue raised only by an amicus curiae is normally not considered on appeal, Bano v. Union Carbide Corp., 273 F.3d 120, 127 n. 5 (2d Cir.2001), we decline to consider the relevance of § 47(b).