Joseph WHITE, et al., Plaintiffs,

v.

**HEARTLAND HIGH–YIELD MUNICIPAL BOND FUND, et al., Defendants.**

No. 00–C–1388.

United States District Court, E.D. Wisconsin.

Dec. 10, 2002.

K. Scott Wagner; Christopher T. Hale; Amy Kossoris, Hale & Wagner, Milwaukee, for Plaintiff or Petitioner.

Barbara J. Janaszek, Pamela M. Schmidt, Whyte, Hirschboeck & Dudek, S.C., Milwaukee.

Emily Nicklin, Timothy A. Duffy, Jonathan Hinkemeyer, Kirkland & Ellis, Chicago, IL.

## ORDER

STADTMUELLER, District Judge.

This matter comes before the court on defendant PricewaterhouseCoopers's LLP ["PwC"] motion to dismiss. In support of its motion PwC argues that plaintiffs fail to state a claim against PwC under Section 11 of the Securities Act of 1933 and under Sections 22 and 34(b) of the Investment Company Act of 1940 ["ICA"]. Because the plaintiffs sufficiently allege a violation of Section 11, the court will deny PwC's motion to dismiss with respect to that claim. The court, however, will grant PwC's motion to dismiss the ICA claims because Sections 22 and 34(b) do not create implied causes of action.

## BACKGROUND

Plaintiffs bring this class action pursuant to several sections of the Securities Act of 1933 and the Investment Company Act of 1940. The action is brought on behalf of a class consisting of all purchasers of shares in the Heartland High–Yield Municipal Bond Fund ["Longer Duration Fund"] and the Heartland Short Duration High–Yield Municipal Fund ["Short Duration Fund"] [collectively, "the Funds"] during the period October 26, 1997 through October 16, 2000 ["the Class Period"]. The suit was precipitated by the Funds' announcement in October 2000 that they had drastically written down the net asset value ["NAV"] of the Longer Duration Fund from $8.01 per share to $2.45 per share and the NAV of the Short Duration Fund from $8.70 per share to $4.87 per share, causing significant financial losses to the plaintiffs and the class. Plaintiffs have settled with all defendants except PricewaterhouseCoopers ["PwC"].

The plaintiffs allege that the dramatic one-day decline in the Funds' NAV resulted from the Funds' failure to adhere to their own stated objectives or to regulatory requirements and PwC's failure, in auditing the Funds' financial statements, to disclose the foregoing and the material uncertainty in the Funds' NAV and to either qualify or disclaim its audit opinions on the Funds' financial statements during the Class Period. Specifically, the plaintiffs allege that the defendants falsely rep-

resented that the Funds would use "fair value" pricing procedures to value high yield municipal bonds for which market quotations were not readily available; that they priced their securities daily; that they would invest no more than 15% of their net assets in illiquid securities; and that they would invest no more than 20% of their total assets in securities rated lower than B-. The plaintiffs allege that their primary contention is that the Funds' shareholders were never told that the value of their shares was so uncertain as to be essentially meaningless.

PwC has filed a motion to dismiss, arguing that the plaintiffs have failed to allege any link between the October 2000 decline in the Funds' NAV and PwC's audit work on the Funds' financial statements for 1999, 1998, and 1997. Specifically, PwC argues that the plaintiffs have failed to identify how or to what extent the financial statements themselves may have been inaccurate and that the plaintiffs' complaint against PwC rests entirely on the assumptions and unsupported inferences that the Funds' financial statements are wrong and that PwC's audit reports on those statements must be false or misleading. PwC argues that all claims against it must be dismissed because the plaintiffs have failed to present facts which show that the alleged causes of the October 2000 decline existed ten months earlier when PwC issued an opinion on the Funds' financial condition.

The plaintiffs respond that PwC made actionable false statements under Section 11 of the Securities Act and Sections 22(c) and 34(b) of the ICA by certifying the Funds' financial statements because the statements failed to disclose the material valuation uncertainty of the Funds' assets, the pricing violations, and the Funds' failure to adhere to their own stated investment policies and restrictions. The plaintiffs allege that PwC did not conduct its audits in accordance with generally accepted auditing standards ["GAAS"] and that the statements were not presented in accordance with generally accepted accounting principles ["GAAP"] because PwC failed to disclose the alleged operational shortcomings of the Funds. According to the plaintiffs, had PwC made such disclosures, corrective action could have been taken to avoid some or all of the purchases and sales of the Funds' shares that took place at erroneous prices or under the auspices of misleading or incomplete information.

## ANALYSIS

In considering a defendant's motion to dismiss for failure to state a claim, the court accepts as true all factual allegations of the complaint and draws all reasonable inferences in favor of the plaintiff. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The court will grant a motion to dismiss only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## I. Section 11 of the Securities Act of 1933

Section 11 of the Securities Act of 1933 imposes liability on issuers, underwriters and auditors, among others, if a registration statement, at the time it became effective, "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). Auditors are liable under Section 11 with respect to those portions of the registration statement prepared or certified by them. *See* 15 U.S.C. § 77k(a)(4) (stating that a person who pur-

chases shares pursuant to a registration statement that contains a material misstatement or omission may sue an accountant "who has with his consent been named as having prepared or certified any part of the registration statement, or as having prepared or certified any, report or valuation which is used in connection with the registration statement ... which purports to have been prepared or certified by him.").

Throughout the complaint, the plaintiffs allege that the 1997, 1998, and 1999 financial statements certified by PwC contain material misstatements and omissions. *See generally* Complaint, ¶¶ 104–185. Specifically, the complaint alleges that PwC, in auditing the Funds' financial statements, was required by SEC rules and regulations as well as generally accepted accounting principles and auditing standards to know about and disclose: the Funds' failure to price all of their portfolio securities daily; their failure to use valuation methods required by SEC rules and regulations, generally accepted accounting principles, and by the Funds' disclosures; the valuation uncertainty attendant to the high-yield municipal bonds in which the Funds invested; and the Funds' noncompliance with the limitations on illiquid securities and below B rated securities. Complaint, ¶ 104 (PwC is obligated to know about the Funds' noncompliance), 160–70 (PwC is required to disclose the Funds' noncompliance). The plaintiffs have identified the following statement certified by PwC which allegedly constitutes a series of false representations:

> the accompanying statements of assets and liabilities, including the schedules of investments, and the related statements of operations and of changes in net assets and the financial highlights *present fairly,* in all material respects, *the financial position* of the [Funds], the results of operations for the year then ended, the *changes in net assets*

> *and the financial highlights* for each of the periods indicated, *in conformity with [GAAP]. . . . We concluded our audits of these financial statements in accordance with [GAAS] . . .* An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, and evaluating the overall financial statement presentation. We believe that our audits ... provide a reasonable basis for the opinion expressed above.

Complaint, at ¶¶ 171, 172.

These allegations are sufficient to state a Section 11 claim against PwC. PwC argues that the plaintiffs have not stated facts which would support the complaint's contention that the Funds' misleading disclosures existed in 1997, 1998, or 1999, but in making such an argument, PwC invites the court to heighten the notice pleading standard and evaluate the merits of the plaintiffs' allegations. The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of the case. *Tabankin v. Kemper Short–Term Global Income Fund,* 1994 WL 30541, *3 (N.D.Ill. Feb.1, 1994); *see Conley,* 355 U.S. at 45–46, 78 S.Ct. 99 (a court should grant a motion to dismiss only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief). It does not appear beyond doubt that the Funds' alleged disclosures were not misleading in 1997, 1998, or 1999, especially given plaintiffs' contention that the Funds admitted that they did not employ fair valuation procedures prior to October 2000 and that conditions in the municipal bond market were the same in October 2000 as they were in 1998 and 1999. *See* Complaint, at ¶¶ 59, 61–66, 68, 69 (conditions in municipal bond market in

October 2000 no different than dates on which PwC's 1998 and 1999 audit reports issued); (Plaintiffs' Memorandum in Opposition to PwC's Motion to Dismiss, at 10–11) (arguing that the Funds' admission that they did not employ fair valuation procedures prior to October 2000 render statements regarding the Funds' NAV and pricing of those securities false). The court construes all reasonable inferences in favor of the plaintiffs and finds that the Section 11 claim survives PwC's motion to dismiss.

■ PwC argues that even if the plaintiffs' allegations state a Section 11 claim, the claim should be dismissed because the Funds' registration statements adequately disclosed the risks to investors. PwC refers to boilerplate language which warns generally that "junk bonds" involve greater risks and limited liquidity. General warnings like this are inadequate to support a motion to dismiss. *See In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 371 (3d Cir.1993) ("[A] vague or blanket (boilerplate) disclaimer which merely warns the reader that the investment has risks will ordinarily be inadequate to prevent misinformation. To suffice, the cautionary statements must be substantive and tailored ...."); *In re MobileMedia Sec. Litig.*, 28 F.Supp.2d 901, 928 (D.N.J. 1998), *quoting Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1097, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991) ("A cautionary statement must discredit the alleged misrepresentation to such an extent that 'the risk of real deception drops to nil' "). In any event, the "bespeaks caution" doctrine upon which PwC relies applies only to "soft information," projections or forecasts, not to whether the Funds complied with their stated policies or to SEC regulations. *See Harden v. Raffensperger, Hughes & Co.*, 65 F.3d 1392, 1404–06 (7th Cir.1995) (holding that "bespeaks caution" doctrine inapplicable to registration statements sued upon).

## II. Sections 22 and 34(b) of the Investment Company Act

PwC argues that Sections 22 and 34(b) create no private right of action. The court agrees.

Courts determine whether a federal private right of action exists for violations of a federal statute by looking to the intent of Congress. *Olmsted v. Pruco Life Ins. Co. of New Jersey*, 283 F.3d 429, 432 (2d Cir. 2002), *citing Alexander v. Sandoval*, 532 U.S. 275, 286, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). Determining congressional intent to create a private right of action is a matter of statutory interpretation. *Id.* A court must begin its search for Congress's intent with the text and structure of the statute, and cannot ordinarily conclude that Congress intended to create a right of action when none was explicitly provided. *Olmsted,* 283 F.3d at 432 (citations omitted).

In this case, neither Section 22 nor Section 34(b) explicitly provides for a private right of action. Nonetheless, plaintiffs cite *In re Nuveen Fund Litigation*, 1996 WL 328006 (N.D.Ill. June 11, 1996), and cases spanning several circuits, almost none of which were handed down in the last decade, for the proposition that federal courts have long recognized implied private causes of action under the ICA.

Neither the U.S. Supreme Court nor the Seventh Circuit have ever explicitly decided whether the ICA creates an implied right of action under the ICA, and the Supreme Court expressly declined the opportunity to do so in *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 97 n. 4, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991). *Boland v. Engle*, 113 F.3d 706, 715 n. 9 (7th Cir.1997). In *Boland,* the Seventh Circuit did comment that recent Supreme Court precedent has cast doubt on the type of analysis that courts have used to find implied rights of action. 113 F.3d at 715 n. 9,

*citing, among others, Central Bank of Denver v. First Interstate Bank of Denver,* 511 U.S. 164, 184–88, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) (overruling decisions by several federal courts of appeal and dozens of district courts which had been implying private rights of action for aiding and abetting violations under Section 10(b) of the 1934 Act). Recently, the Supreme Court has again stated that it has "retreated from our previous willingness to imply a cause of action where Congress has not provided one." *Correctional Services Corp. v. Malesko,* 534 U.S. 61,—n. 3, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001) (finding no implied private right of action against private entities that engaged in alleged constitutional deprivations while acting under color of federal law).

■ Aside from the Seventh Circuit's comments in *Boland,* the Second Circuit's recent decision in *Olmsted* appears to be the only court of appeals decision to address implied causes of action under the ICA following *Central Bank.* The Second Circuit held that Sections 26(f) and 27(i) create no private causes of action, *Olmsted,* 283 F.3d at 436, reasoning that the absence of explicit language creating a cause of action raises a presumption that Congress did not intend to create a cause of action, a presumption strengthened by three additional features of the statute: (1) the language of §§ 26(f) and 27(i) does not contain rights-creating language; specifically, the sections only describe actions by insurance companies which are prohibited, rather than individuals who are protected by the statute, suggesting that Congress did not intend to confer rights upon a particular class of persons; (2) § 42 of the ICA explicitly provides for enforcement of all ICA provisions by the Securities and Exchange Commission, suggesting that Congress may have intended to preclude other methods of enforcement; and (3) Congress explicitly provided a private right of action in § 36(b), suggesting that

omission of an explicit private right to enforce other sections was intentional. *See Olmsted,* 283 F.3d at 432–33.

■ The plaintiffs do not address any of these arguments but instead argue that *Olmsted*'s holding addresses only §§ 26(f) and 27(i), not § 34(b). *See* (Plaintiffs' Memorandum in Opposition to PwC's Motion to Dismiss, at 24 n. 22, 26 n. 25.) As PwC points out in its reply brief, however, *Olmsted*'s rationale applies to §§ 22 and 34(b) with equal force. *(See* PwC's Reply Memorandum in Further Support of its Motion to Dismiss, at 11–12.) The court agrees that the absence of explicit language creating a right of action raises a strong presumption against the creation of an implied right of action, *see West Allis Memorial Hosp., Inc. v. Bowen,* 852 F.2d 251, 254 (7th Cir.1988), and that the factors identified by *Olmsted* strengthen that presumption. The plaintiffs appear to have cited only one case decided after *Central Bank* which is specific to either § 22 or § 34(b). *See Nuveen,* 1996 WL 328006 (N.D.Ill. June 11, 1996). In *Nuveen,* the district court determined that §§ 34(b) and 36(a) created private causes of action by relying primarily on a House Committee report which accompanied the 1980 amendments to the ICA. *Id.* at *5–6. This court respectfully disagrees with *Nuveen*'s heavy reliance upon subsequent legislative history to find an implied cause of action. *See Central Bank,* 511 U.S. at 185–86 (stating that the interpretation one Congress applies to an earlier statute is of limited relevance in determining the meaning of an unamended section of the statute) (citations omitted). In addition, the House Report specifically identifies § 36(a), not § 34(b), and *Nuveen* does not appear to anticipate the factors identified in *Olmsted* which suggest that Congress did not intend to create implied causes of action. *See also Dorchester Investors v.*

988

*Peak International Ltd.,* 134 F.Supp.2d 569, 581 (S.D.N.Y.2001) (holding that § 34(b) creates no private cause of action, rejecting plaintiffs' reliance upon *Nuveen,* and adopting the reasoning of *Olmsted v. Pruco Life Ins. Co. of New Jersey,* 2000 WL 1739307 (E.D.N.Y. Oct.30, 2000)).

Accordingly,

**IT IS ORDERED** that PwC's motion to dismiss be and the same is hereby **GRANTED** in part and **DENIED** in part.