**David F. LEACH, Plaintiff,**

v.

**MEDIACOM, Defendant.**

**No. CIV. 4–02–CV–70545.**

United States District Court,
S.D. Iowa,
Central Division.

Jan. 13, 2003.

---

David F. Leach, Des Moines, IA, Pro se.

Michael A. Giudicessi, William J. Hunnicutt, Faegre & Benson, Des Moines, for Mediacom, Defendant.

MEMORANDUM OPINION AND RULING DISMISSING COMPLAINT
FOR LACK OF STANDING

VIETOR, Senior District Judge.

Plaintiff David Leach, proceeding *pro se*, brings this action against defendant Mediacom [1] alleging violations of the Ca-

---

1. Mediacom is the name by which a cable    television company does business. Defendant

ble Communications Policy Act ("Cable Act"), 47 U.S.C. §§ 521–573. Plaintiff seeks, *inter alia,* injunctive relief compelling Mediacom to cablecast on its public access programming channel certain material produced by plaintiff. Hearing was held on plaintiff's application for a preliminary injunction on November 20, 2002, and subsequent briefing was allowed.[2] For the reasons articulated herein, plaintiff's complaint will be dismissed.

## FACTS

Mediacom operates a cable television system for the City of Des Moines, Iowa, pursuant to a non-exclusive franchise agreement. As a condition of the franchise, Mediacom must provide without charge "one specially designated noncommercial public access channel available to the public on a first-come, nondiscriminatory basis ...." Cable Franchise Agreement: City of Des Moines, Iowa § 6.1(a)(i) (reproduced in Purcell Aff. Ex. B). The quoted language is mandated by section 110–47(a) of the City of Des Moines Municipal Code. Public access channels "are channels that over the years, local governments have required cable system operators to set aside for public, educational, and governmental purposes as part of the consideration an operator gives in return for permission to install cables under the city streets and to use public rights-of-way." *Denver Area Educ. Telecomm. Consortium. Inc. v. F.C.C.,* 518 U.S. 727, 734, 116 S.Ct. 2374, 135 L.Ed.2d 888 (1996). Mediacom makes available channel 15 on its Des Moines system for public access programming.

David Leach is the producer of "The Uncle Ed Show," a program that Mediacom has aired twice weekly for several years on channel 15. Sometime before November 13, 2002, Leach inquired of Mediacom whether it would cablecast, on channel 15, programs containing photographs of aborted fetuses and video footage of unidentified but identifiable women entering a Planned Parenthood Clinic. Mediacom advised Leach that it would not cablecast such programs because the material was not constitutionally protected and was otherwise unacceptable.

On November 13, 2002, Leach submitted two videotapes for cablecast on Mediacom's public access channel. In his accompanying request for cablecasting time, Leach described the first program as:

> These are the prohibited pictures, UNBLURRED, which you have promised not to air; along with my explanation of their importance. Along with this tape I am submitting a tape of the same content except with the pictures blurred, for airing on these dates.

Leach described the second program as:

> These are the prohibited pictures, BLURRED, FOR IMMEDIATE AIRING, along with this tape I am submitting a tape of the same content except with the pictures unblurred, for use in court.

Mediacom reviewed both of the videotapes and determined that neither was suitable for cablecasting, as each contained graphic photographs of aborted fetuses and video and still images of persons on the premises of a Planned Parenthood

---

identifies itself as Mediacom Iowa LLC or MCC Iowa LLC, d/b/a Mediacom.

**2.** On October 30, 2002, the court certified to the Attorney General of the United States, pursuant to 28 U.S.C. § 2403(a), that the constitutionality of 47 U.S.C. § 531 had been

drawn into question by the defendant. Upon the United States' unresisted motion, the court granted the United States until January 27, 2003 to intervene, but placed all parties on notice that a ruling on the pending application for a preliminary injunction was expected before that date.

Clinic. On November 15, 2002, Mediacom notified Leach by letter and by telephone that it would not cablecast the two programs. Leach subsequently provided to Mediacom a third videotape that blurred out the objectionable content. Mediacom cablecasted the third version of The Uncle Ed Show on Saturday, November 16, 2002. Leach alleges that Mediacom's decision not to cablecast the unblurred version constitutes an unlawful form of editorial control prohibited by § 531(e) of the Cable Act.

After holding a hearing on Leach's application for a preliminary injunction, this court raised *sua sponte* the issue of whether a private right of action exists under § 531(e). At the court's request, both Leach and Mediacom filed briefs addressing the issue.[3]

## DISCUSSION

As a court of limited jurisdiction, this court has a threshold duty to assure itself that it has subject matter jurisdiction in each case. *See Sanders v. Clemco Indus.,* 823 F.2d 214, 216 (8th Cir.1987). "[F]ederal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'" *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). Thus, although Mediacom did not originally challenge Leach's standing to assert his claim under § 531(e), the court is obligated to consider the standing issue *sua sponte. Juidice v. Vail,* 430 U.S. 327, 331, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Patel v. Fleur de Lis Motor Inns, Inc.,* 771 F.Supp. 961, 966 (S.D.Iowa 1991). Without a private right of action to enforce

§ 531(e), Leach lacks standing to bring suit in federal district court. *Warth v. Seldin,* 422 U.S. 490, 500–01, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Howe v. Ellenbecker,* 8 F.3d 1258, 1261 (8th Cir.1993) ("Because standing is determined by the specific claims presented, whether [the plaintiffs] have standing depends on whether the statute at issue ... creates an express or implied right of action.") (citations omitted).

Leach does not contend that § 531(e) expressly creates a private right of action. Instead, he relies upon *McClellan v. Cablevision of Conn., Inc.,* 149 F.3d 161 (2d Cir.1998), for his assertion that a private right of action is implied under the statute. In *McClellan,* the Second Circuit analyzed the statute under the four-factors analysis provided in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and concluded that all four factors dictated a finding that an implied right of action exists under § 531(e). *McClellan,* 149 F.3d at 164–69. A case from another circuit, while persuasive authority, is not binding precedent for this court. With that in mind, I conclude that the United States Supreme Court's subsequent decision in *Alexander v. Sandoval,* 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), undermines the validity of the Second Circuit's holding and therefore I decline to follow *McClellan.*

"[The Supreme] Court has long since abandoned its hospitable attitude towards implied rights of action." *Thompson v. Thompson,* 484 U.S. 174, 190, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988) (Scalia, J., concurring). Since its decision in *J.I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555,

**3.** In its brief on the issue, Mediacom suggested that the court could take judicial notice pursuant to Fed.R.Evid. 201 of the fact that Leach made a presentation to the Des Moines City Council on December 2, 2002, concerning his public access channel complaints. Leach subsequently filed a statement with the court concurring with Mediacom's suggestion. I neither read the minutes, nor viewed the videotape of the council meeting. I decline the parties' invitations to take judicial notice of the event because it is not relevant to the disposition of this case.

12 L.Ed.2d 423 (1964), the Court has "retreated from [its] previous willingness to imply a cause of action where Congress has not provided one." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 67 n. 3, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001). This trend culminated with the *Sandoval* decision in which the Court took the following view toward implied rights of action:

> Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute. Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals.

*Id.* at 286–87, 121 S.Ct. 1511 (citations and internal quotation marks omitted).

*Sandoval* clarifies the proper approach for courts to take when analyzing implied rights of action. Rather than undertaking the four-factors approach of *Cort*, the sole factor a court must consider is whether Congress intended to create a private right of action. *Id. See also Gonzaga Univ. v. Doe*, 536 U.S. 273, ——, 122 S.Ct. 2268, 2276, 153 L.Ed.2d 309 (2002) (The inquiry "simply require[s] a determination as to whether or not Congress intended to confer rights upon a class of beneficiaries."). The remaining three *Cort* factors are relevant only to the extent that they shed light on the existence or non-existence of congressional intent. *See Thompson*, 484 U.S. at 189, 108 S.Ct. 513 (Scalia, J., concurring) ("It could not be plainer that we effectively overruled the *Cort v. Ash* analysis . . . converting one of its four

factors (congressional intent) into the *determinative factor*, with the other three merely indicative of its presence or absence.").

■ Determining congressional intent is a matter of statutory interpretation. *Sandoval*, 532 U.S. at 286, 121 S.Ct. 1511. A court, therefore, must "begin [its] search for Congress's intent with the text and structure" of the statute. *Id.* at 288, 121 S.Ct. 1511. Section 531(e) provides:

> Subject to section 544(d) of this title, a cable operator shall not exercise any editorial control over any public, educational, or governmental use of channel capacity provided pursuant to this section, except a cable operator may refuse to transmit any public access program or portion of a public access program which contains obscenity, indecency, or nudity.

§ 531(e). Because the statute does not expressly provide for a private right of action, the presumption is that Congress did not intend one. *Olmsted v. Pruco Life Ins. Co. of New Jersey*, 283 F.3d 429, 432 (2d Cir.2002).

This presumption is further supported by the absence of "rights-creating" language, which the Court in *Sandoval* found critical to the existence of congressional intent. *Sandoval*, 532 U.S. at 288–89, 121 S.Ct. 1511; *see also Gonzaga*, 536 U.S. at ——, 122 S.Ct. at 2275 n. 3 ("Where a statute does not include . . . explicit 'right- or duty-creating language' [the Court] rarely impute[s] to Congress an intent to create a private right of action."). Rights-creating language is language which "explicitly confer[s] a right directly on a class of persons that include[s] the plaintiff in the case." *Cannon v. Univ. of Chicago*, 441 U.S. 677, 690 n. 13, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). Rather than conferring rights onto the producers of public access programs, § 531(e) only describes

prohibited actions of cable operators. "Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" *Sandoval,* 532 U.S. at 289, 121 S.Ct. 1511.

Moreover, when read in its entirety, § 531 does not itself mandate the establishment of public access channels. Section 531(b) provides:

> A franchising authority *may* in its request for proposals require as part of a franchise, and *may* require as part of a cable operator's proposal for a franchise renewal, subject to section 546 of this title, that channel capacity be designated for public, educational, or governmental use, and channel capacity on institutional networks be designated for education-al or governmental use, and may require rules and procedures for the use of the channel capacity designated pursuant to this section.

§ 531(b) (emphasis added). Instead of creating public access channel rights for producers, the statute merely recognizes "the preexisting practice of local franchise authorities conditioning the cable franchises on the granting of [public access] channels." *Time Warner Entm't Co., L.P., v. F.C.C.,* 93 F.3d 957, 972 (D.C.Cir.1996). "All the statute does then, is preempt states from prohibiting local [public access channel] requirements (if any states were to choose to do so) and preclude federal preemption challenges to such requirements ...." *Id.* Consequently, any rights regarding the use of public access channels are not created by § 531, but stem from franchise agreements between cable operators and franchising authorities. Nothing in § 531 suggests that Congress intended to create a private right of action in federal court to remedy the rights of third party beneficiaries of these franchise agreements.

In addition to looking for rights-creating language as evidence of congressional intent, a court must examine the statutory structure within which the provision in question exists. *Love v. Delta Air Lines,* 310 F.3d 1347, 1353 (11th Cir.2002). Of critical importance in this case is the fact that Congress expressly provided an enforcement mechanism for violations of the statute. Congress chose to vest enforcement authority in franchising authorities rather than in public access program producers. Specifically, § 531(c) provides:

> A franchising authority may enforce any requirement in any franchise regarding the providing or use of such channel capacity. Such enforcement authority includes the authority to enforce any provisions of the franchise for services, facilities, or equipment proposed by the cable operator which relate to public, educational, or governmental use of channel capacity, whether or not required by the franchising authority pursuant to subsection (b) of this section.

§ 531(c). As the Court in *Sandoval* observed:

> The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others. Sometimes the suggestion is so strong that it precludes a finding of congressional intent to create a private right of action, even though other aspects of the statute (such as language making the would-be plaintiff "a member of the class for whose benefit the statute was enacted") suggest the contrary.

*Sandoval,* 532 U.S. at 290, 121 S.Ct. 1511. I conclude that Congress's express method of enforcement in § 531(c) precludes a finding of congressional intent to create a private right of action.

This conclusion is further supported by examining § 531 in the broader context of

the entire Cable Act. Section 531 stands in stark contrast to § 532 of the Cable Act, which expressly provides a private right of action in federal district court for disputes over programming on leased channels. § 532(d). "Obviously ... when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly." *Touche Ross & Co. v. Redington,* 442 U.S. 560, 572, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979).

Despite the lack of statutory intent to create a private right of action, Leach argues that refusing to allow private enforcement of § 531(e) would constitute a *de facto* repeal of the statute. In essence, Leach would have this court harken back to the jurisprudence reflected in *Borak* in which the court observed that "it is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose" of the statute. *Borak* 377 U.S. at 426, 84 S.Ct. 1555. The same reason was presented to the Court in *Sandoval* and was expressly rejected. *Sandoval,* 532 U.S. at 287, 121 S.Ct. 1511 ("Having sworn off the habit of venturing beyond Congress's intent, we will not accept respondents' invitation to have one last drink.").

Leach further claims that congressional intent to imply a private right of action can be inferred from Congress's silence on the issue in the 1992 and 1996 amendments to the Cable Act. Before the 1992 and 1996 amendments to § 531, three district courts had held that § 531(e) provided a private cause of action. *McClellan,* 149 F.3d at 166 (citing *Mo. Knights of the Ku Klux Klan v. Kansas City, Mo.,* 723 F.Supp. 1347, 1354 (W.D.Mo.1989), *Altmann v. Television Signal Corp.,* 849 F.Supp. 1335, 1341 n. 6 (N.D.Cal.1994), and *Glendora v. Cablevision Sys. Corp.,* 893 F.Supp. 264, 269 (S.D.N.Y.1995)). Accordingly, Leach reasons that Congress's silence incorporates these holdings into the amendments.

In *Sandoval,* the Court found the same argument unconvincing. "[W]hen, as here, Congress has not comprehensively revised a statutory scheme but has made only isolated amendments ... [i]t is impossible to assert with any degree of assurance that congressional failure to act represents affirmative congressional approval of the Court's statutory interpretation." *Sandoval,* 532 U.S. at 292, 121 S.Ct. 1511 (internal quotation marks omitted). "In determining whether statutes create private rights of action, as in interpreting statutes generally, ... legal context matters only to the extent it clarifies text." *Id.* at 288, 121 S.Ct. 1511 (citations omitted). "A statutory provision that does not use rights-creating language, in a statute that provides for other remedies and contains explicit private rights of action to enforce other sections, creates no ambiguity on the question of an implied private right of action that legal context might clarify." *Olmsted,* 283 F.3d at 435.

## CONCLUSION

After reviewing the text and structure of § 531, I find and conclude that there is not a congressional intent to create a private cause of action for public access programmers in federal district court. "Under these circumstances, the teachings of *Sandoval* plainly preclude a federal court from implying such right of action." *Love,* 310 F.3d at 1360. Consequently, Leach is without standing to bring his claim in federal district court.

**IT IS ORDERED** that plaintiff's complaint be **DISMISSED** for lack of standing.